_____

No. 96-1031WM
_____

William T. Boliek,                    *
                                      *
          Appellee,                   *
                                      *    On Appeal from the United
     v.                               *    States District Court
                                      *    for the Western District
                                      *    of Missouri.
Michael Bowersox, Warden,             *
                                      *
          Appellant.                  *

_____

              Submitted:  June 12, 1996

              Filed:  September 23, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Circuit Judge, and
     KORNMANN,* District Judge.
_____


RICHARD S. ARNOLD, Chief Judge.


     The Superintendent of the Potosi Correctional Center appeals from the
District Court's order granting William Theodore Boliek's petition for a
writ of habeas corpus.  We reverse.


                                   I.


     In August 1983, Boliek was sharing a home in Kansas City, Missouri,
with Don Anderson, Vernon Wait, and Jill Harless, who was

_____

     *The Hon. Charles B. Kornmann, United States District Judge
for the District of South Dakota, sitting by designation.

Boliek's fiancé.  One evening, the petitioner, Anderson, Wait, and Jody Harless, Jill's sister, robbed the home of Stan Gray, a drug dealer and gang member.  Following the robbery, Boliek and Wait discussed the need to "get rid of witnesses" to the crime, including Jody Harless.  Vernon Wait suggested killing Jody Harless by injecting her with battery acid.

Three days later, the petitioner discovered that the police were looking for Jody Harless.  Jill and Jody Harless, Wait, and Boliek decided to hide from the police by travelling to Thayer, Missouri.  En route to Thayer, the four stopped their car on a rural road to relieve themselves.  Jill Harless testified that she saw Boliek fire a shotgun at her sister.  Grabbing her stomach, Jody got up and yelled, "No Ted, please don't."  Wait pulled Jody to the ground, and the petitioner pointed his gun at her.  Jill got back into the car and heard a second gunshot.  According to Jill, Boliek later told her that he had aimed at Jody's mouth so that the police would not be able to identify her body.

At trial, the petitioner admitted that he fired the shot into the victim's stomach.  He testified that he thought that his gun was unloaded and that he pulled the trigger merely to frighten her.  As for the second shot, Boliek explained that after Wait threw the victim to the ground, Wait took Boliek's gun away from him and killed Jody Harless.

The jury convicted Boliek of capital murder and, finding that he had killed Jody Harless in order to prevent her from becoming a witness in a future judicial proceeding, recommended a sentence of death.  The Missouri Supreme Court affirmed.  State v. Boliek, 706 S.W.2d 847 (Mo.) (en banc), cert. denied, 479 U.S. 903 (1986).  Boliek unsuccessfully sought postconviction relief under Mo. S. Ct. R. 27.26.[1]  Boliek v. State, 755 S.W.2d 417 (Mo. App. 1988), cert.

---

[1]Rule 27.26 has since been replaced by Rule 29.15.

denied, 489 U.S. 1040 (1989). The Missouri Supreme Court denied Boliek's petition for habeas relief and his motion to recall the Court's mandate.

The District Court granted Boliek's petition for a writ of habeas corpus. Boliek v. Delo, 912 F. Supp. 1199 (W.D. Mo. 1995). The first ground for granting relief involved a tattoo, which is on Boliek's back, of a smoking shotgun with the words "Death Dealer" beneath it. The Court found that Boliek's trial counsel was ineffective for not objecting to the prosecution's questioning of witnesses about the tattoo and the prosecution's use of the tattoo in closing argument. The petitioner's trial counsel was also deficient, the Court held, for failing to present mitigating evidence at the penalty phase concerning Boliek's mental condition and social history. Finally, the Court concluded that Boliek received ineffective assistance of counsel on direct appeal because his lawyer did not argue that he was deprived of his right to an examination by a court-appointed psychiatrist.

II.

We begin by considering whether Boliek's claims relating to the tattoo and to the evidence his lawyer failed to present at the penalty phase are procedurally barred. It is undisputed that the petitioner did not raise these claims in his Rule 27.26 proceeding. However, the District Court held that the claims were not barred because the Rule 27.26 court interfered with Boliek's ability to raise his claims and thus caused the procedural default. See Coleman v. Thompson, 501 U.S. 722, 750 (1991) (a procedural default is excused if the habeas petitioner demonstrates "cause for the default and actual prejudice . . .."); Tippitt v. Lockhart, 903 F.2d 552, 555 (8th Cir.), cert. denied, 498 U.S. 922 (1990) (cause for a procedural default exists when a state court interferes with a petitioner's ability to raise a claim).

After Boliek had filed a pro se motion for postconviction relief, the Rule 27.26 court appointed counsel to represent him. At a subsequent hearing, Boliek's counsel, who had not yet conferred with his client despite having had the appointment for about a month, asked for a continuance so that he could amend Boliek's pro se motion. Before granting the continuance, the Court said to Boliek:

> I want you to tell me now . . . in what other ways Mr. Sterling [Boliek's trial counsel] was ineffective in assisting. I want to hear every complaint you have against Mr. Sterling right now . . . so we don't have to plow this ground again on February 10th. Now tell me what else you have a complaint about.

Resp't Ex. F 24. Boliek extemporaneously listed a number of ways in which he thought that his trial counsel was ineffective, but did not mention the ineffective-assistance claims he now seeks to raise. The Court then told Boliek's counsel, "You may amend your pleadings to include everything [Boliek has] raised today, but you can't raise new items. That's right, because I want that exhausted today." Id. at 30.

We need not decide whether the motion court's insistence that Boliek list all his claims on the spot, without the assistance of counsel, constituted cause to excuse the procedural default. Even if the motion court's actions amounted to cause, for us to rule on Boliek's habeas claims, he must have used "any available procedure" to present those claims in state court. 28 U.S.C. § 2254(c). To have satisfied this exhaustion requirement, Boliek had to have challenged the conduct of the motion court in the appropriate state forum. He did not do so.

In the appeal from the denial of his Rule 27.26 motion, Boliek made no allegation that the motion court had acted improperly. Nor did he attempt in any other way to present the ineffective

assistance claims he now wishes to raise. Boliek tries to explain this omission by asserting that the Missouri Court of Appeals did not have the authority to remedy the motion court's alleged interference with his ability to present his claims. But that is not the law. There are numerous examples of cases in which prisoners have successfully challenged the actions of Rule 27.26 courts. See, e.g., Parker v. State, 785 S.W.2d 313 (Mo. App. 1990) (motion court erred by dismissing the Rule 27.26 petition of a defendant who had received no assistance of counsel); Young v. State, 724 S.W.2d 326 (Mo. App. 1987) (reversing the dismissal of a Rule 27.26 petition because the motion court had not given counsel notice or an opportunity to be heard); Ray v. State, 644 S.W.2d 663 (Mo. App. 1982) (motion court's dismissal of a Rule 27.26 petition was improper because counsel had not had an opportunity to amend the petition and to consult with the defendant).

Moreover, the Missouri Supreme Court disagrees with the petitioner's argument. Boliek eventually filed a petition for habeas corpus with the Missouri Supreme Court which, for the first time, presented the issue of the motion court's conduct. The Court, which is the final authority on this question of state law, denied the petition, holding that Boliek's claim was procedurally barred. See Pet'r Br., App.

Boliek's current lawyers, who are representing him diligently and vigorously, argue that it is unreasonable to expect counsel on Boliek's state-court postconviction appeal to raise issues that, at least at the time of the evidentiary hearing in the 27.26 court, Boliek himself had not discovered. We understand the point but disagree. There has to be a time when issues, including claims of ineffectiveness of counsel, are fully investigated and argued. That time is in the state postconviction proceeding, at least where states choose to create such a remedy, which Missouri has. It was the duty of counsel to consult with his client, conduct a

reasonable investigation, and raise all claims in a timely fashion.  It is not permissible for a petitioner to wait until he files a federal habeas petition to develop his claims fully.  Such a practice would be disrespectful of the autonomy and independence of the state courts, which are, under our federal system, primarily responsible for the administration of criminal justice.  If the motion court improperly cut off counsel's opportunity to investigate, counsel should have objected at that time or, as we have explained, raised the issue on appeal.  If counsel was deficient in failing to do so, petitioner still cannot show cause to avoid his procedural default, because ineffectiveness of postconviction counsel cannot be cause.  Nolan v. Armontrout, 973 F.2d 615 (8th Cir. 1992).  Boliek's claims of ineffective assistance of trial counsel are therefore procedurally barred.  We do not reach the merits of these claims.

III.

We now turn to Boliek's claim that his counsel on direct appeal was ineffective.  The Constitution requires that a criminal defendant receive effective legal representation in his first direct appeal.  Evitts v. Lucey, 469 U.S. 387 (1985).  In reviewing a claim of ineffective assistance of appellate counsel, a court must apply the familiar test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail, the defendant "must show that his counsel's performance fell below professional standards and that his defense was prejudiced by his counsel's ineffectiveness." Schneider v. Delo, 85 F.3d 335, 339 (8th Cir. 1996).  See Strickland, 466 U.S. at 688, 694.

Boliek asserts that his appellate lawyer was ineffective for failing to argue that Boliek was unconstitutionally denied access to a psychiatrist to help him prepare for the penalty phase of his trial.  This claim is based on Ake v. Oklahoma, 470 U.S. 68 (1985), in which the Supreme Court held that when an indigent defendant's

mental condition will be a significant issue at trial, the Due Process Clause requires the state to ensure that the defendant has access to a "psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 83. In capital cases, an indigent defendant whose mental condition may be at issue is entitled to an examination aimed at evaluating, preparing, and presenting mitigating psychiatric evidence. Starr v. Lockhart, 23 F.3d 1280, 1288-90 (8th Cir.), cert. denied, 115 S. Ct. 499 (1994) (citing Ake, 470 U.S. at 86).

We begin our assessment of Boliek's Ake claim by discussing the context in which his trial lawyer requested a psychiatric exam. At the time of his arrest for the murder of Jody Harless, Boliek had an extensive history of mental-health problems. From 1975 through 1980, the petitioner was examined by several psychiatrists, who diagnosed him as suffering from a number of mental conditions, ranging from antisocial-personality disorder to cyclothymia. See Boliek, 912 F. Supp. at 1208-10. Accordingly, Boliek's attorney, Peter Sterling, asked the trial court to appoint a psychiatrist to determine whether Boliek was competent to stand trial and whether he was sane at the time of the murder. Pet'r Ex. 21. Dr. A. E. Daniel examined the petitioner and concluded that he was suffering from no mental disease or defect and was manipulating and malingering. See Resp't Ex. B 162. Dr. Enrique Dos Santos, another court-appointed psychiatrist, later confirmed the diagnosis. Ibid.

On June 28, 1984, Mr. Sterling asked the Court to allow him to retain a psychiatrist, to be paid for by the defense, to rebut Dr. Daniel. Pet'r Ex. 23. Mr. Sterling filed another motion, on July 6, asking the Court to appoint a psychiatrist "to examine defendant and report to counsel for defendant regarding psychiatric and psychological aspects of the defendant's personality constituting mitigating circumstances." Pet'r Ex. 19. On July 9, the Court

granted the first motion.  See Pet'r Ex. 24.   As for the second of these motions, on July 12, the Court ruled that Boliek could have the mitigation examination, but that the defense would have to pay for it.  Pet'r Ex. 20.

Mr. Sterling then retained Dr. George Dowell to provide an opinion regarding the petitioner's sanity at the time of the murder and his competency to stand trial.  The doctor, who was paid by the public defender's office, was not asked to look for mitigating psychiatric evidence for Boliek to use during the penalty phase of his trial.  Pet'r Ex. 14, at 35-36.  Although the results of this examination are now unavailable, Mr. Sterling has recalled that "they were not consistent with [an insanity] defense."  Id. at 94.

As an indigent capital defendant with a long history of mental-health problems, Boliek certainly had a right, under Ake, to access to a mitigation examination.  The examinations performed by Drs. Daniels and Dos Santos, which were limited to determining whether the petitioner was competent to stand trial and sane at the time of the offense, did not fulfill the state's obligation.  See Starr, 23 F.3d at 1290 (a capital defendant who had received only an examination for competency and sanity was deprived of his right to "an expert to make an appropriate examination and to explain the effects of his retardation on his relative culpability at the sentencing phase of the proceedings").  But that does not necessarily mean that the trial court committed constitutional error by denying Boliek's request for a court-funded mitigation examination.  A court is not required to appoint a psychiatrist for someone whose defense already has the wherewithal to pay for an appropriate psychiatric examination.  See id. at 1289 (distinguishing a case in which "appointed defense counsel had generously procured the needed expert with his own funds").

If the public defender's office had the funds to pay Dr. Dowell to conduct a competency examination, why could it not have

also paid him to examine Boliek for mitigation purposes?[2]  The petitioner now speculates that the public defender's office ran out of money.  But Boliek presents no evidence to support this hypothesis.  More importantly, he never made any such representation to the trial court, either before or after the Court denied his motion for the funding of a mitigation examination.

Indeed, deposition testimony from Mr. Sterling undermines Boliek's theory:

> Q.  I think you also talked earlier today about the mitigation phase of the trial -- the punishment phase.  Did Mr. Boliek himself give you any names of -- well, let's start first, did he give you any background into his past medical history, his past mental history, that might be used in mitigation.
>
> A.  Yeah, he mentioned some treatment -- I mean, these were things that were pursued in the -- in the area of the psychiatric exams and so forth.
>
> Q.  Right.  And you had requested that prior to trial.
>
> A.  Yes.
>
> Q.  And I think you stated that the Court would not fund it, but would allow him to be examined.  I think it was if the public defender would fund it.
>
> A.  Yeah, I mean, I don't think I asked the Court and --
>
> Q.  Okay.
>
> A.  I had funds available for that purpose.

Pet'r Ex. 14, at 90-91.

---

[2]Boliek asserts that the state never argued to the District Court that he had funds available to pay for the mitigation examination.  That is not true.  See Jt. App. 12, at 24-25.

Boliek contends that in saying that he "had funds available for that purpose," Mr. Sterling was not referring to a mitigation examination. The petitioner notes that Mr. Sterling prefaced his answer by saying, "I don't think I asked the Court . . .." Since Mr. Sterling did not ask the Court to pay for the competency examination performed by Dr. Dowell, but did ask it to fund the mitigation examination, Boliek asserts that Mr. Sterling must have been referring to the competency examination.

We are not persuaded. It is unclear whether the phrase "I don't think I asked the Court . . ." refers to funding. Furthermore, the whole line of questioning dealt with preparation for the penalty phase. This suggests that Mr. Sterling was, in fact, admitting that he had money available to pay for a mitigation examination. More fundamentally, even if Boliek's explanation of this testimony were correct, that would not change the fact that the ability of the public defender's office to pay for the competency examination suggested that the defense was also able to pay for the mitigation examination. If the public defender's office had run out of money, it was the petitioner's responsibility to inform the Court.

We are not holding that there is a rigid rule requiring a defendant to say specifically to a court, "I cannot afford a psychiatric examination." Usually, when an indigent defendant requests a court-appointed psychiatrist, it is appropriate to infer that he cannot pay for a psychiatric examination. But we cannot draw this inference when the defense pays for a competency examination and fails to explain why it cannot also afford a mitigation examination.

We conclude that Boliek's Ake claim would not have succeeded. Accordingly, Boliek suffered no prejudice from his appellate lawyer's failure to raise the claim, and the District Court should not have granted his petition for habeas corpus.

-10-

IV.

For these reasons, the order of the District Court granting William Theodore Boliek's petition for a writ of habeas corpus is reversed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.