## S05A1564. BELMAR v. THE STATE.
(621 SE2d 441)

BENHAM, Justice.

Appellant Samuel Nathaniel Belmar was convicted of malice murder in connection with the homicide of Savalas Cousar and appeals the judgment of conviction entered against him.[1] Finding no reversible error to have been committed, we affirm the conviction.

---

[1] The victim's body was found on April 22, 2000. The DeKalb County grand jury returned a true bill of indictment against appellant, charging him with malice murder, felony murder (aggravated assault) and armed robbery in the July 2000 term. Appellant's trial commenced July 26, 2001, and concluded on July 31 with the jury's return of its guilty verdicts on the murder counts after the trial court had directed a verdict of acquittal on the armed robbery

On Saturday, April 22, 2000, the body of Savalas Cousar was found partially covered by a blanket in the reclined passenger seat of his car which was parked with its engine running in the parking lot of a DeKalb County elementary school. The forensic pathologist who performed an autopsy on the body determined the victim had been shot in the face by a shotgun from a distance of two-six inches. The shotgun slug and cardboard wadding had passed through the victim's skull and were found in a kerchief worn on his head. The day after the body was discovered, a shotgun consistent with the slug and wadding was found by children in the backyard of the home of the girlfriend of appellant Samuel Nathaniel Belmar. The owner of that shotgun testified he had given it to appellant for safekeeping. Appellant's girlfriend initially told police appellant had been with her the evening the victim was last seen alive but, upon further questioning, admitted she had not been with him and had lied to police at appellant's request. The girlfriend testified appellant came to her home Saturday morning and told her he had killed someone he believed had drugged appellant's drink and robbed appellant at a local club. Appellant did not name the person, but identified the purported robber as the man who had accompanied him to the club Friday evening. The girlfriend stated appellant told her he had awakened in the club, found his companion in the club's parking lot, and had driven the companion's car to the nearby school where he shot the companion in the face with a "gauge" while the victim was sleeping.

A family friend of appellant testified appellant had asked her to tell police he had been with her the entire weekend the victim was killed. When threatened with the possibility of a perjury prosecution, the witness told police appellant had visited her home on Sunday morning and had told her he believed he had killed someone. In a noncustodial statement to investigating officers, appellant admitted he and the victim had worked together for about a week, with appellant serving as the victim's job trainer; the victim had given him a ride to his girlfriend's home at the end of the workday on Friday; the victim invited appellant to go to a club with him that evening; and the victim went home to shower and dress for the evening out.

1. The evidence presented by the State was sufficient to authorize a rational trier of fact to find appellant guilty of malice murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

charge. Appellant's sentence of life imprisonment was initially imposed July 31 and was amended on August 3. His motion for new trial, filed August 31, 2001, was denied April 22, 2005. A notice of appeal was filed timely on May 20, 2005, and the appeal was submitted for decision on the briefs.

2. Appellant contends the trial court committed reversible error when, pursuant to the "necessity" exception to the rule against the admission of hearsay, it permitted the victim's mother to testify to the contents of a statement made to her by the victim. Over defense objection, the victim's mother testified the victim had told her the evening before his body was found that he was going to a club with a co-worker.

Two requirements must be met in order for a trial court to admit hearsay under the "necessity" exception: "necessity" and "particularized guarantees of trustworthiness." *Ward v. State*, 271 Ga. 648 (2) (520 SE2d 205) (1999). To meet the "necessity" component, the hearsay proponent must show the declarant is unavailable and the statement is relevant to a material fact and is more probative of that fact than other evidence which may be offered; to meet the "trustworthiness" requirement, the declaration must be " 'coupled with circumstances which attribute verity to it. [Cit.]' " Id. The trial court in the case at bar allowed the hearsay after the State noted the hearsay declarant was dead and had never retracted his statement to his mother before his death, and the State offered to ask the victim's mother whether the victim was "generally truthful with her about his comings and goings." Even if we assume for the sake of argument that the tripartite "necessity" prong was met in this case, we conclude it was error to admit the hearsay because the State did not present circumstances attributing verity to the hearsay.

Whether testimony was accompanied by particular guarantees of trustworthiness is a matter for the trial court's discretion. *Myers v. State*, 275 Ga. 709 (2) (572 SE2d 606) (2002). In the case before us, the only information the trial court had on the topic was the prosecutor's suggestion that she could ask the victim's mother whether the victim was generally truthful with her about his plans. The victim's mother was never asked about her son's truthfulness or about the state of the relationship between her and her son, leaving only the fact that they were mother and son. The existence of a familial relationship alone is not sufficient to establish the required particularized guarantees of trustworthiness. Id., 275 Ga. at 712; *Carr v. State*, 267 Ga. 701 (3) (482 SE2d 314) (1997), overruled on other grounds, *Clark v. State*, 271 Ga. 6 (5) (515 SE2d 155) (1999).

The erroneous admission of hearsay testimony is not reversible error where the hearsay is cumulative of legally admissible evidence of the same fact. *Myers v. State*, supra, 275 Ga. at 712. The fact that the victim was going to a club with a co-worker the night he was killed was established by appellant's acknowledgment to police officers in his noncustodial statement that he and the victim worked together and that the victim had invited him to go out with him that Friday evening. The fact that appellant accompanied the victim to a club was

established by the testimony of appellant's girlfriend that appellant had told her he had gone to a club with a man who had drugged and robbed him, and had killed the man and left him in his car in the local elementary school's parking lot. The hearsay being cumulative of legally admissible evidence, its erroneous admission into evidence does not constitute reversible error.

3. Appellant also takes issue with the admission into evidence of a photograph of appellant's right upper back displaying a tattoo reading "12 gauge" and containing rectangular shapes which the assistant district attorney described as "totally unfamiliar" and "meaningless" to her. The photo was the subject of appellant's motion in limine, to which the State responded the photo was relevant because the killing was done with a 12-gauge shotgun and was probative of appellant's state of mind and his motive. Over objection, the trial court admitted the photo, finding it relevant since the case involved allegations the perpetrator used a 12-gauge shotgun and ruling the photo not "unreasonably prejudicial." On appeal, appellant argues the admission of the photo served no purpose other than to suggest he committed the crime because a 12-gauge shotgun was the murder weapon. The State maintains the tattoo reflected appellant's state of mind regarding 12-gauge shotguns and that his actions were motivated by his access to and attachment to 12-gauge shotguns.

We have upheld the admission of a photograph of a tattoo on the body of the defendant when it is evidence of a possible motive for the crime (*Allen v. State*, 272 Ga. 513 (4) (530 SE2d 186) (2000)), or when it is used for purposes of identification. *Carruthers v. State*, 272 Ga. 306 (10) (528 SE2d 217) (2000) (review of record shows photo of defendant's tattoo of a tiger admitted after witness described the tiger tattoo on the man she saw with the victim). Other courts also have admitted evidence of tattoos for purposes of establishing motive or to aid in identification. *State v. Schulz*, 691 NW2d 474 (Minn. 2005) (photo of defendant's tattoo admissible when it helped to identify voice on telephone audiotape claiming to have committed the crime); *Pagan v. State*, 809 NE2d 915 (Ind. App. 2004) (fact that defendant had a tattoo on his hand was relevant to victim's identification of him as the robber, though testimony on the meaning of the tattoo was irrelevant and potentially prejudicial); *State v. Meade*, 196 W. Va. 551 (474 SE2d 481) (1996) (trial court did not abuse discretion in directing defendant to reveal tattoos when they were relevant to the identity of the perpetrator); *Thomas v. State*, 811 P2d 1337, 1343 (Okla. Crim. App. 1991) (evidence concerning defendant's tattoo admissible to identify defendant); *State v. Hubbard*, 659 SW2d 551 (Mo. Ct. App. 1983) (evidence of tattoos corroborating eyewitness's identification of defendant as perpetrator was admissible); *State v. Bowden*, 113 R.I. 649 (324 A2d 631) (1974) (in order to verify witness's identification

testimony, defendant required to bare forehead to reveal tattoo to which witness had testified). See also *Morris v. State*, ___ SW3d ___, 2004 WL 2110870 (Ark. 2004) (where defendant testified he was angry because he believed he had been shown a lack of respect, evidence of defendant's tattoo advocating death before dishonor admissible to show his state of mind when he was not shown respect); *Roth v. State*, 788 A2d 101, 111 (Del. Supr. 2001) (statement by defendant in armed robbery investigation that he had an aversion to guns could be impeached by testimony regarding the tattoo of a gun on the defendant's back).

Evidence of tattoos has been rejected as irrelevant when identification of the defendant was not an issue (*State v. Steele*, 510 NW2d 661 (S.D. 1994)), as an improper use of character evidence (*State v. Huff*, 145 Ohio App. 3d 555 (763 NE2d 695) (2001) (trial court abused its discretion in admitting irrelevant evidence of defendant's tattoo)), and as an improper attempt to establish the defendant acted in conformity with the tattoo. *Boliek v. Delo*, 912 FSupp. 1199 (W.D. Mo. 1995), rev'd due to procedural default sub nom., *Boliek v. Bowersox*, 96 F3d 1070, 1071 (8th Cir. 1996). In cases similar to the case at bar, i.e., where the prosecution presented evidence of a defendant's tattoo which depicted a weapon similar to that involved in the crime, appellate courts have found error in the admission because the prejudicial effect outweighed the probative value. *Brooks v. State*, 903 S2d 691 (Miss. 2005) (where the victim had been repeatedly stabbed in the neck with a fork, evidence that the defendant had a tattoo of a "Grim Reaper" armed with a pitchfork should not have been admitted); *United States v. Thomas*, 321 F3d 627 (7th Cir. 2003) (where defendant was charged with possession of a firearm (a .357 revolver) while a convicted felon, admission of evidence of the defendant's tattoo depicting crossed revolvers was an abuse of discretion since its only purpose was to establish the defendant's propensity to possess guns).

In the case at bar, the evidence of appellant's tattoo did not corroborate any testimony regarding the identity of the killer and, contrary to the State's assertion, there was no evidence the victim was killed because appellant had an attachment to 12-gauge weapons. Rather, the State established at trial that appellant killed the victim because appellant believed the victim had drugged and robbed him.[2] In essence, the State used the evidence of appellant's tattoo to establish for the jury that the appellant must have killed the victim

---

[2] There was also the suggestion at trial that appellant killed the victim in order to obtain the victim's gold necklace. In fact, appellant was charged in the indictment with armed robbery of the victim, with the gold chain being the property allegedly taken from the victim. However, the trial court directed a verdict of acquittal on this charge at the close of the evidence.

because the victim was killed with a 12-gauge shotgun and the tattoo showed appellant had a propensity to use a 12-gauge shotgun. To show a defendant has a propensity for certain behavior, the State may introduce evidence of the defendant's prior similar behavior. *Cotton v. State*, 279 Ga. 358 (2) (613 SE2d 628) (2005); *Hampton v. State*, 272 Ga. App. 273 (2) (612 SE2d 96) (2005). The existence of a tattoo, in and of itself, does not establish a defendant's propensity to act in conformance with that depicted in the tattoo. We conclude the trial court abused its discretion when it overruled appellant's objection to the admission into evidence of the photo of appellant's tattoo.

The trial court's error requires a new trial unless it is " 'highly probable that the error did not contribute to the judgment.' " *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976) (standard for weighing nonconstitutional error in criminal case). Reversal is not required if the evidence of guilt is so overwhelming " 'that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error. [Cit.]' " *Felder v. State*, 266 Ga. 574, 576 (468 SE2d 769) (1996). In light of the testimony of appellant's girlfriend and his family friend about appellant's statements recounting the killing with details corroborated by the evidence, and appellant's connections to both the victim and to the shotgun believed to have caused the victim's death, we conclude that the erroneous admission of the photo of appellant's tattoo did not contribute to the verdict and therefore does not constitute reversible error. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 24, 2005.

*Gerald B. Kleinrock*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Robert M. Coker, Sheila A. Connors, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.