**2013 UT App 100**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
*Plaintiff and Appellee,*
*v.*
DANIEL MARTINEZ ORTIZ,
*Defendant and Appellant.*

Memorandum Decision
No. 20120198-CA
Filed April 25, 2013

Second District, Ogden Department
The Honorable W. Brent West
No. 101900863

Samuel P. Newton, Attorney for Appellant
John E. Swallow and Michelle M. Young, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision,
in which JUDGES CAROLYN B. MCHUGH and STEPHEN L. ROTH
concurred.

DAVIS, Judge:

¶1      Daniel Martinez Ortiz appeals his conviction for aggravated robbery, a first degree felony, *see* Utah Code Ann. § 76-6-302 (LexisNexis 2012), on the ground that he was unfairly prejudiced by the trial court's denial of his motion for permission to cover his facial tattoos at trial.[1] We affirm.

---

1. We are aware of no rule or statute requiring a defendant to obtain permission to cover up tattoos, although there are measures available to aid in identification that might justify requiring a defendant to display his tattoos where the tattoos are relevant, *see*

(continued...)

¶2    Ortiz asserts that the tattoos were inadmissible under rules 401, 402, and 403 of the Utah Rules of Evidence because they were irrelevant and unfairly prejudicial. *See generally* Utah R. Evid. 401, 402, 403. Ortiz's argument rests on the assumption that the tattoos constituted evidence and that their admissibility was therefore governed by the Utah Rules of Evidence. However, as the State points out, Ortiz's tattoos were not admitted or used as evidence in this case, and their mere visibility as part of Ortiz's general appearance was not subject to the evidentiary limitations of rules 401, 402, and 403.

¶3    Ortiz cites a number of cases from other jurisdictions analyzing the admissibility of tattoo evidence under evidentiary rules. However, in each of those cases, the defendants' tattoos were actually used as evidence and referenced at trial. *See United States v. Smith*, 348 F. App'x 636, 638–39 (2d Cir. 2009) (reviewing the admissibility of a photograph of the defendant's tattoo depicting a skeleton firing a gun and the words "D'EVILS WITHIN"); *United States v. Newsom*, 452 F.3d 593, 559–604 (6th Cir. 2006) (considering prejudice resulting from the prosecution's questioning witnesses about the defendant's tattoos depicting firearms and gang-related symbols); *United States v. Thomas*, 321 F.3d 627, 630–33 (7th Cir. 2003) (reviewing the admissibility of a photograph of the defendant's tattoo depicting two revolvers); *United States v. Irvin*, 87 F.3d 860, 862, 865–66 (7th Cir. 1996) (considering the prejudicial impact of testimony describing a tattoo and its connection to a motorcycle gang); *Boliek v. Delo*, 912 F. Supp. 1199, 1212–13 (W.D. Mo. 1995) (reviewing the admissibility of testimony that the defendant had a tattoo depicting a smoking double-barreled shotgun and the words "Death Dealer"), *rev'd on other grounds sub*

---

1. (...continued)
Utah R. Crim. P. 16(h) (listing activities the accused may be required to engage in for identification purposes, such as "cut[ting] hair or allow[ing] hair to grow to approximate appearance at the time of the alleged offense").

*nom*, *Boliek v. Bowersox*, 96 F.3d 1070 (8th Cir. 1996); *Belmar v. State*, 621 S.E.2d 441, 444–46 (Ga. 2005) (reviewing the admissibility of a photograph of a tattoo that read "12 gauge" where the alleged crime was committed with a 12-gauge shotgun); *Brooks v. State*, 903 So. 2d 691, 699–700 (Miss. 2005) (reviewing the admissibility of evidence connecting the defendant's tattoo to gang activity); *State v. Huff*, 763 N.E.2d 695, 703 (Ohio Ct. App. 2001) (evaluating prejudice where on "cross-examination, the state had [the defendant] display his tattoos to the jury and asked him what the tattoos meant and why he wore the tattoos" and suggested to the jury that the tattoos were gang-related).

¶4      Here, neither the State nor any of the witnesses referred to Ortiz's tattoos or their meaning, and no other evidence drew the tattoos to the attention of the jury. The tattoos were merely visible on Ortiz's face and served no apparent evidentiary purpose.[2] Because the tattoos did not relate to any alleged fact at issue, they

---

2. Although the State asserts that the tattoos may have aided the witnesses in identifying Ortiz, none of the witnesses cited the tattoos as the basis of their identification or otherwise referred to the tattoos. Ultimately, it is difficult to see how the trial court's ruling prejudiced Ortiz. We disagree with Ortiz's assertion that tattoos carry the same indicia of guilt as prison garb or handcuffs. *See generally Estelle v. Williams*, 425 U.S. 501, 504 (1976); *State v. Mitchell*, 824 P.2d 469, 473 (Utah Ct. App. 1991). While tattoos might carry a negative connotation for some, they are not exclusively associated with prisoners or criminals the way prison clothing and handcuffs are. Unlike prison garb, tattoos are voluntarily donned by the defendant and, once created, are part of his regular appearance. Furthermore, in this case, the jurors were specifically asked whether the facial tattoos would affect their ability to be fair and impartial and none of the jurors indicated that they would. If anything, the defense used Ortiz's tattoos to its advantage by suggesting that the witnesses' failure to mention his tattoos undermined the credibility of their identifications.

did not constitute evidence and were therefore not subject to the rules of evidence. *See generally Black's Law Dictionary* 635 (9th ed. 2009) (defining "evidence" as "[s]omething (including testimony, documents and tangible objects) that tends to prove or disprove the existence of an alleged fact"); 31A C.J.S. *Evidence* § 2, at 18–19 (2008) ("Evidence is the demonstration of a fact; it signifies that which demonstrates, makes clear, or ascertains the truth of the very fact or point at issue, either on the one side or on the other. In legal usage, the term 'evidence' includes all the means by which any alleged matter of fact, the truth of which is submitted to investigation, is established or disproved." (footnotes omitted)). Accordingly, we reject Ortiz's argument that the tattoos constituted inadmissible evidence and that he therefore should have been permitted to cover them, and we affirm Ortiz's conviction.

———————