FINAL COPY
294 Ga. 682

S13A1569. MOORE v. THE STATE.

B LACKWELL, Justice.

Cornelius Antwan Moore was tried by a Richmond County jury, and he was convicted of murder and several other crimes, all in connection with the killing of Jezreel Hammond. Moore appeals, contending that the trial court erred with respect to the admission of certain evidence at trial. We see no harmful error with respect to the evidence admitted at trial, but we conclude that the trial court did err when it convicted Moore of three distinct counts of unlawful possession of a firearm during the commission of a felony. Under the precedents, Moore properly could be convicted of only two such counts. Accordingly, we vacate the conviction and sentence as to one count of possession of a firearm during the commission of a felony, and we otherwise affirm the judgment of conviction and sentence.[1]

---

[1] The crimes were committed on October 2, 2008. Moore, Ian Bonner, and Kenneth Gaines were indicted on December 23, 2008, and each was charged with malice murder, felony murder, armed robbery, aggravated assault, burglary, and three counts of unlawful possession of a firearm during the commission of a crime. Prior to trial, Gaines entered a plea of guilty to conspiracy to commit armed robbery. The trial of Moore and Bonner commenced on September 13, 2010, and the jury returned its verdict on September 16, 2010, finding Moore guilty on all counts, and Bonner not guilty on all counts. On September 20, 2010, the

1. Viewed in the light most favorable to the verdict, the evidence shows that Moore — who was then 16 years of age — and two other juveniles attempted to rob Kenneth Gaines on October 2, 2008.[2] According to Gaines, Moore was armed with a "long" gun, which Gaines described as a "chopper." But Gaines convinced the robbers that he did not have any money, and he suggested that they rob Jezreel Hammond instead. Gaines drove Moore to a location near the home that Hammond and his grandmother shared, and the other juveniles followed in another car.

_____

trial court sentenced Moore to a term of imprisonment for life for felony murder, a consecutive term of imprisonment for life for armed robbery, a consecutive term of imprisonment for twenty years for aggravated assault, another consecutive term of imprisonment for twenty years for burglary, and finally, consecutive terms of imprisonment for five years for each of the three counts of possession of a firearm during the commission of a crime. The trial court entered no judgment of conviction or sentence as to malice murder. Although the trial court should have sentenced Moore for malice murder, rather than felony murder, Powell v. State, 289 Ga. 901, 902 (717 SE2d 215) (2011), that sentencing error does not harm Moore, and he understandably does not complain about it on appeal. Threatt v. State, 293 Ga. 549, n. 1 (748 SE2d 400) (2013). Moore timely filed a motion for new trial on October 18, 2012, and, following a hearing, the trial court denied that motion on May 7, 2013. Moore timely filed a notice of appeal on May 11, 2013, and the case was docketed in this Court for the September 2013 term and submitted for decision on the briefs.

[2] Gaines identified the other robbers as Ian Bonner and Brodrick Seals. As noted above, Bonner was indicted and tried together with Moore, but the jury acquitted Bonner on all counts. As of the time of the trial, Seals had not been charged with any crimes in connection with the killing of Hammond, but Seals was incarcerated on other charges.

Inside the Hammond home, the grandmother awoke to the sound of someone kicking in the back door. She overheard several individuals demanding drugs or money from Hammond in another room. As she got out of her bed, an intruder — whose face was covered, and who carried a "long" gun — came into her bedroom, shoved her, and told her not to move. At some point, the grandmother overheard a struggle and gunshots. Hammond then staggered into the bedroom, having sustained multiple gunshot wounds, one of which proved to be fatal. Crime scene investigators found blood on the wall of a bathroom in the Hammond home, and the Georgia Bureau of Investigation sent a sample of the blood to an outside laboratory for testing, along with a tissue sample taken from Moore. According to a GBI forensic biologist, the outside lab returned DNA profiles to the GBI, and those profiles were consistent, strongly suggesting that the samples from which the profiles were derived had a common source.

Moore does not dispute that the evidence is sufficient to sustain his convictions, but we nevertheless have independently reviewed the record, with an eye toward the legal sufficiency of the evidence. We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Moore was guilty of the crimes of

3

which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, Moore claims that the admission of the testimony of the GBI forensic biologist concerning the DNA profiles produced by an independent lab was a violation of his constitutional right to confront his accusers. Although the GBI forensic biologist compared the profiles herself and offered her own opinions about their consistency, she nevertheless used profiles that were produced by a technician at the outside lab, whom the State did not make available at trial for cross-examination. As Moore contends, such testimony raises serious constitutional questions. See Williams v. Illinois, ___ U. S. ___ (132 SCt 2221, 183 LE2d 89) (2012). We conclude, however, that Moore failed to preserve any constitutional error with respect to the admission of this testimony, and for that reason, we need not determine whether its admission comports with the right of confrontation.

Before trial, Moore filed a motion to compel the State to produce the outside lab technician at trial, arguing that the admission of her report — which evidently compared the DNA profiles and concluded that they were consistent — would otherwise violate his right of confrontation. About the admission of

such a report, Moore is right that such a report generally cannot be admitted consistent with the right of confrontation, unless, of course, the individual whose opinions are reflected in the report is made available for cross-examination. See, e.g., <u>Bullcoming v. New Mexico</u>, ___ U. S. ___ (131 SCt 2705, 180 LE2d 610) (2011); <u>Melendez-Diaz v. Massachusetts</u>, 557 U. S. 305 (129 SCt 2527, 174 LE2d 314) (2009). But at the hearing on the pretrial motion, the State responded that it had no intention of offering the report itself as evidence at trial. And indeed, at the trial of this case, the State never offered any evidence of the report, nor did the trial court admit any such evidence. The report itself appears nowhere in the record. And no witness — including the GBI forensic biologist — testified at trial to the content of the report.[3] Instead, the State made clear at the pretrial hearing that it intended to call the GBI forensic biologist at trial to testify about her own comparison of the DNA profiles. Moore complained that the GBI forensic biologist would be unable to

---

[3] At one point in her trial testimony, the GBI forensic biologist began to speak of the findings of the outside lab about the frequency of the DNA profiles at issue in the population. Moore objected to this testimony on hearsay grounds, the prosecuting attorney rephrased his inquiry — redirecting the GBI forensic biologist to her own assessment of frequency — and the trial court made no ruling on the objection. In any event, Moore said nothing in this contemporaneous objection about his right of confrontation.

testify about the actual testing that produced the DNA profiles, but the trial court — which, at that point, had heard no testimony from the GBI forensic biologist, only the proffers and arguments of counsel — explained that Moore could examine the GBI forensic biologist at trial about her knowledge of the testing procedures employed by the outside lab in its preparation of the profiles. As to whether the GBI forensic biologist properly could testify at trial about the consistency of the DNA profiles, the trial court indicated at the pretrial hearing that such testimony might well be admissible, "assuming that the State's witness can proffer [adequate evidence about] what the testing procedure [was]."

As we understand the comments of the trial court at the pretrial hearing, the trial court merely determined that the testimony of the GBI forensic biologist about the DNA profiles could be admissible, depending on the foundation actually laid at trial, and as such, the trial court essentially deferred any final decision about the admissibility of such testimony until trial. Consistent with the pretrial thinking of the trial court, a plurality of the United States Supreme Court recently concluded that the right of confrontation may permit an expert witness in some circumstances to testify to her own scientific opinions, even though her

opinions are based on data generated by tests conducted by personnel at another lab who do not appear at trial. See Williams, ___ U. S. at ___, 132 Sct at 2235 (III) (plurality op.).[4] And in any event, Georgia law permits a trial court to defer final decision about the admissibility of testimony until trial. See Wiggins v. State, 249 Ga. 302, 303 (1) (b) (290 SE2d 427) (1982). So, to preserve any claim under the Confrontation Clause with respect to the admission of the testimony of the GBI forensic biologist, it was necessary for Moore to make a contemporaneous objection at trial to such testimony, Dasher v. State, 285 Ga. 308, 311 (4) (676 SE2d 181) (2009), and to make such an objection on confrontation grounds, as opposed to other grounds. See Walton v. State, 278 Ga. 432, 434-435 (1), (2) (603 SE2d 263) (2004) (hearsay objection does not

---

[4] In Williams, the plurality opinion reflected the views of only four Justices. But a fifth Justice reasoned in his concurring opinion that the statements of the outside lab upon which the testifying expert had relied lacked the formality to amount to "testimonial" statements and, therefore, did not implicate the right of confrontation. See Williams, ___ U. S. at ___, 132 SCt at 2255 (Thomas, J., concurring). In this case, neither the report nor the data produced by the outside lab appear in the record, and so, the record fails to show that any statements of the outside lab upon which the GBI forensic biologist relied were made with the requisite formality to amount to a "testimonial" statement under the analysis employed by Justice Thomas in his concurring opinion. Accordingly, the thinking of the trial judge that the opinion testimony of the GBI forensic biologist might turn out to be admissible — depending upon exactly what she said and the foundation that she might lay for her opinion testimony — is not demonstrably inconsistent with the reasoning of the Williams plurality or the concurring opinion of Justice Thomas in Williams.

7

preserve appellate review of claim under Confrontation Clause). When the GBI forensic biologist testified at trial about the DNA profiles, Moore never made a contemporaneous objection on confrontation grounds. Accordingly, he has failed to preserve his claim of error for appellate review.

3. In his only other enumeration of error, Moore contends that the trial court erred when it admitted evidence that Moore had a tattoo upon his arm that depicted a gun like the one carried by the intruder at the Hammond home, along with the words "Chopper Zone." When this evidence was tendered, Moore objected that the evidence was irrelevant and unfairly prejudicial, but the trial court overruled his objection. In Belmar v. State, 279 Ga. 795 (621 SE2d 441) (2005), the defendant was convicted of murder with a 12-gauge shotgun, and at trial, evidence was admitted that the defendant had the phrase "12 gauge" tattooed upon his back. We found error in the admission of that evidence, noting that "[t]he existence of a tattoo, in and of itself, does not establish a defendant's propensity to act in conformance with that depicted in the tattoo." Id. at 800 (3). Here, as in Belmar, the tattoo was not offered as evidence of identity or motive. It was offered, instead, simply to suggest a propensity to carry or use a firearm

like that depicted in the tattoo. For that purpose, the evidence of the tattoo was inadmissible under Belmar, and its admission was error.[5]

We conclude, however, that it is highly probable that the erroneous admission of the tattoo evidence did not contribute to the verdict. See Belmar, 279 Ga. at 800 (3). Gaines testified at trial that three men tried to rob him, that Moore was among them, that Moore carried a "long" gun, that Gaines urged them to rob Hammond instead, and that Gaines drove Moore to a location near the Hammond home. The grandmother testified that several men forcibly entered her home, that one carried a "long" gun, that she was not acquainted with Moore, and that, to her knowledge, he never before had been in her home. And there was evidence that Moore's blood was found in the home. Based upon this evidence, there is no reasonable probability that the verdict of the jury would have been different if the tattoo evidence had not been admitted. Accordingly, the error in its admission was harmless.

---

[5] We note that no evidence in the record of this case shows that the firearm depicted in Moore's tattoo is an unusual or uncommon one. Likewise, no evidence in this case shows that the intruders in the Hammond home ever used the term "chopper" to refer to the long gun that one of them carried. We offer no opinion about whether such evidence might render the tattoo evidence admissible.

4. Under our decision in State v. Marlow, 277 Ga. 383 (589 SE2d 69) (2003), Moore could not properly be convicted of *three* distinct counts of unlawful posession of a firearm during the commission of a crime. See id. at 386 (2) (c) ("[W]here multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree, as provided under OCGA § 16-11-106 (b) (1) [crimes against the person], and additionally once for firearm possession for every crime enumerated in subsections (b) (2) through (5) [unlawful entry, theft, controlled substances, and drug trafficking crimes]"). Here, the evidence was that the robbers had one gun, and there were two victims of the crimes charged in the indictment (Hammond and his grandmother). Consequently, the trial court should have convicted Moore of only two counts of possession of a firearm while committing a crime — one for each of the victims — and it should have merged the third count. We, therefore, vacate the conviction and sentence for possession of a firearm during the commission of an armed robbery of

Hammond. See <u>Bradley v. State</u>, 292 Ga. 607, 609-610 (1) (b) (740 SE2d 100) (2013). We otherwise affirm.

<u>Judgment affirmed in part and vacated in part. All the Justices concur.</u>

———

Decided March 3, 2014.

Murder. Richmond Superior Court. Before Judge Jolly.

*Robert L. Persse, Stuart H. Hunter Patray, Russell R. Jones*, for appellant.

*Ashley Wright, District Attorney, Madonna M. Little, Kimberly S. Easterling, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.