# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2007-SC-000195-MR

FINAL

DATE 4|9|09 _Kelley Klaber_ D.C.

MARK A. COLYER, JR.                                                APPELLANT

ON APPEAL FROM PULASKI CIRCUIT COURT
V.        HONORABLE JEFFREY THOMAS BURDETTE, JUDGE
NO. 06-CR-00203

COMMONWEALTH OF KENTUCKY                                           APPELLEE

## MEMORANDUM OPINION OF THE COURT

### REVERSING AND REMANDING

Appellant, Mark Colyer, Jr., was convicted by a Pulaski Circuit Court jury of two counts of first-degree assault and two counts of second-degree assault. For these crimes, Appellant received sentences of ten years on each count of first-degree assault, and five years on each count of second-degree assault. The sentences were ordered to be served consecutively for a total sentence of thirty years imprisonment. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110.

Appellant asserts five arguments in his appeal: 1) that the trial court improperly admitted evidence of his prior bad acts; 2) that the trial court erred when it did not provide a jury instruction on the defense of voluntary intoxication; 3) that the jury instruction on self-defense improperly stated the law; 4) that the amendment of the indictment to include additional offenses

was prejudicial; and 5) that the trial court erred when it denied Appellant's motion for directed verdicts. Because the trial court failed to provide an instruction on the defense of voluntary intoxication, we reverse Appellant's convictions and sentence.

On the morning of July 7, 2006, Appellant woke up at his brother's apartment in Somerset, Kentucky, and started drinking alcohol. Appellant testified that as he prepared to start recording music with his brother, some girls stopped by the apartment. One of those girls was a fifteen-year-old named K.E.[1] Appellant was twenty-three years old at the time. After the girls stopped by the apartment several times, Appellant agreed to come outside and talk with them. The group eventually ended up at a neighbor's apartment where Appellant testified he drank more alcohol and took five Klonopin tablets.

Upon returning to his brother's apartment, Appellant was confronted by two teenage boys, N.S. and T.H., about his involvement with K.E. Accounts of the confrontation vary. N.S. testified that T.H. told Appellant to leave K.E. alone and that Appellant then threatened to kill both of them. N.S. also stated that Appellant showed them tattoos and claimed to be in a gang. A neighbor named Julius Jackson witnessed the confrontation. He testified that Appellant walked over to T.H. and N.S. and began to threaten them. Jackson intervened and told Appellant that if he had a problem with the children he should take it up with their parents. Appellant provides a different version of events.

---

[1] Since this case deals with criminal acts, the names of all the minors are being withheld.

Appellant testified that N.S. and T.H. jumped to the wrong conclusion about his hanging out with K.E. He said there was initially a small confrontation between the parties, but afterwards all three went to his brother's apartment to listen to music.

Several hours later, Sam Hodge, K.E.'s uncle and T.H.'s dad, returned to the apartment complex. Appellant testified that when Hodge returned home a group of people were milling about outside. Present in the group were Jackson, Kenneth Robbins, Angela Robbins, Johnnie Burchfield, and Dearld Helbert. Other witnesses indicated that these people were not milling about outside or at least were not near Appellant. Appellant was in the complex's playground talking with K.E. and a group of girls. Hodge walked up to Appellant and asked him if he knew the ages of the girls that he was hanging around. Appellant replied that he knew K.E. was fifteen but didn't know the ages of the others. At this point, Hodge apparently hit Appellant, though the testimony of how this happened varied. Appellant testified that as he took a drink of alcohol, Hodge hit him. Others testified that Hodge hit Appellant when Appellant menacingly approached him. Angela Robbins testified that Appellant took the first swing.

Appellant then testified that as he tried to grab a sharp object in Hodge's hand someone hit him on the back of the head with a chair. Appellant believed he was getting jumped by everyone who had been outside. He testified that he blacked out at that very moment and does not remember the ensuing stabbings.

Other witnesses give a different account of the events. Kenneth Robbins testified that he saw Hodge speak to Appellant but did not witness the fight between them. He heard Appellant tell Hodge that he would return with his brother. Kenneth testified that he was not involved in the initial confrontation. After Appellant left the playground Kenneth sat on the front porch of his apartment with his wife Angela, Burchfield, and Helbert.

Kenneth then testified that after a short time Appellant returned to the scene. Appellant asked Kenneth "where is that motherfucker at?" Before a response could be given, Appellant attacked the party. Kenneth received a slash on his arm. Burchfield was stabbed in the stomach. Helbert was struck in the face. Donna Shadoan, who was inside her apartment at the time, heard the commotion and opened her patio door to look outside. She testified that Appellant was standing in the door, yelled at her "bitch, get back in the house," and stabbed her in the neck.

After the attack Appellant fled the apartment complex. He testified that he tried to steal a bicycle to get away but was too drunk to ride it. He passed out in the woods and woke up the next morning unsure of what had happened the previous day. Appellant then returned to his home in Cincinnati, Ohio.

A Pulaski County Grand Jury indicted Appellant with one count of first-degree assault "by stabbing Donna Shadoan, Kenneth Robbins, Johnny Burchfield, and Dearld E. Helbert with a knife." After Appellant's arraignment, the prosecutor moved ex parte to amend the indictment to make a separate first-degree assault charge for each victim. The motion was granted. The

4

Pulaski Circuit Court jury ultimately convicted Appellant of two counts of first-degree assault, and two counts of second-degree assault and sentenced him to thirty years imprisonment.

## I. Appellant Should Have Received an Instruction on the Defense of Voluntary Intoxication

Appellant's first allegation of error is that the trial court should have provided the jury with an instruction on voluntary intoxication. Appellant tendered the following instruction to the trial court:

> Even though the Defendant might otherwise be guilty of first-degree assault under Instruction No. _____ or second-degree assault under Instruction No. _____, you shall not find him guilty under those Instructions if at the time he committed the offense he was so intoxicated that he did not form the intention to commit the offense.

Appellant's rationale for requesting this instruction was based on his testimony at trial that he was drinking heavily[2] and taking Klonopin tablets the day of the assault. Appellant testified that he blacked out right before he began his assaults and once he regained consciousness was too drunk to ride a bike. The trial court ruled that a voluntary intoxication instruction was unnecessary in light of Appellant's ability to testify in detail about what had happened during the day of the assaults, and therefore, he did not satisfy the statutory prerequisites for receiving such an instruction.

KRS 501.080 states that intoxication can be a defense to a criminal charge if that condition "[negates] the existence of an element of the offense."

---

[2] Appellant testified at trial that on the day of the assault he drank a complete bottle of vodka, a complete bottle of champagne, a complete bottle of some unknown liquor, and several beers.

Mere drunkenness alone does not require an intoxication instruction. See Jewell v. Commonwealth, 549 S.W.2d 807, 812 (Ky. 1977) overruled on other grounds, Payne v. Commonwealth, 623 S.W.2d 867 (Ky. 1981). An intoxication instruction is only necessary when the intoxication was so great that the evidence indicates the defendant did not know what he was doing in committing the crimes. Springer v. Commonwealth, 998 S.W.2d 439, 451 (Ky. 1999).

In this matter, there is enough evidence to support a jury instruction on intoxication. Appellant's testimony that he drank heavily and used drugs on the day of the assault alone would not entitle him to an intoxication instruction if not for his testimony that he blacked out during the commission of the assaults. Appellant's testimony regarding his intoxication or blacking out may seem preposterous on its face. However, Appellant's testimony raises a jury question as to whether Appellant was too intoxicated to form the intent to commit assault. See Mishler v. Commonwealth, 556 S.W.2d 676, 680 (Ky. 1977) (holding that while defendant's testimony was almost certainly preposterous, it raised a jury question on whether the defendant was too intoxicated to form the intent to commit a crime).

While it is true that Appellant was able to remember events which occurred before and after the assaults, such a fact does not negate his entitlement to receive an intoxication instruction. Rather, the key to such entitlement is whether Appellant could form the intent to commit the crime as he was committing the crime. See Id. (holding that since the defendant

6

testified that he was blacked out only during the commission of the crime a jury instruction on intoxication was warranted). Thus, since the trial court improperly instructed the jury, a new trial is warranted for Appellant. See Id. Although Appellant's claim of intoxication seemingly conflicts with his claim of self-defense, it is a longstanding principle that the trial court is to provide instructions "applicable to every state of case covered by the indictment and deducible from or supported to any extent by the testimony." Lee v. Commonwealth, 329 S.W.2d 57, 60 (Ky. 1959). If similar evidence regarding Appellant's intoxication is presented at his retrial, an instruction on voluntary intoxication must be provided.

Since the failure to provide an instruction on voluntary intoxication entitles Appellant to a new trial, we now will only review his other allegations of error to the extent necessary to provide guidance to the trial court on retrial.

## II.  Trial Court's Self-Defense Instruction

Appellant next argues that the trial court's instruction on self-defense improperly stated the law and affected the jury's ability to consider that defense. Appellant argues that the trial court's jury instructions were erroneous because it did not indicate that if he was mistaken in his belief that he needed to defend himself he could be found guilty of a lesser included wanton or reckless crime, such as fourth-degree assault. KRS 503.060. The jury instruction on self-defense stated:

> Even though the Defendant might otherwise be guilty of first-degree assault under Instruction No. 4, or second-degree assault under Instruction No. 5, if at the time the defendant stabbed _____ he believed _____, or others

7

acting in concert with him, was then and there about to use physical force upon him, he was privileged to use such physical force against _____ as he believed to be necessary in order to protect himself from death or serious physical injury compelled by force or threat at the hands of _____, or others acting in concert with him.

Appellant believes that a more appropriate jury instruction would have been similar to the instruction from Cooper, <u>Kentucky Instructions to Juries – Criminal</u> §11.09 (5th ed. 2007).

The trial court has a duty in a criminal prosecution to instruct the jury on the entire law of the case. <u>Lawson v. Commonwealth</u>, 218 S.W.2d 41 (Ky. 1949). Thus, the jury must receive instructions on any state of the case supported by the evidence provided. <u>Commonwealth v. Duke</u>, 750 S.W.2d 432 (Ky. 1988). Instructions on the mistaken belief to use self-defense must be provided if supported by the evidence. <u>Hilbert v. Commonwealth</u>, 162 S.W.3d 921, 925 (Ky. 2005). In this matter, the trial court erred by not providing a self-defense jury instruction which accounted for the lesser-included offense of fourth-degree assault. Appellant's main defense at trial was that he acted in self-defense during the altercation with Sam Hodge. Appellant testified that he initially believed that everyone who was outside was trying to attack him. After he claimed he blacked out, Appellant ended up injuring people other than Hodge who apparently were not involved in the altercation. Thus, the jury could potentially have found that Appellant had a mistaken belief that he needed to act in self-defense and thus acted recklessly or wantonly in attacking people who were of no threat to him. At retrial, if evidence similar to that

presented at the initial trial is presented, an instruction on fourth-degree assault should be provided.

### III. Introduction of Bad Acts Evidence

Appellant argues that several times the trial court impermissibly allowed the admission of prior bad acts evidence. KRE 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

A three-part inquiry is used to determine if the evidence of prior bad acts evidence is admissible. Bell v. Commonwealth, 875 S.W.2d 882, 889 (Ky. 1994); see also Lawson, The Kentucky Evidence Law Handbook, § 2.25(3) (4th ed. 2003). We must determine if the evidence is relevant, probative, and not overly prejudicial. Bell, 875 S.W.2d at 889. Using this framework, we will now review each individual admission of prior bad acts evidence.

A. Admission of evidence regarding Appellant's behavior towards K.E.

Appellant first argues that the trial court impermissibly allowed the admittance of evidence regarding Appellant's interaction with K.E. At trial, several people testified that Appellant had inappropriately touched and interacted with K.E. throughout the day. Testimony indicated that this belief led to Appellant's fight with T.H. and N.S. and the ultimate confrontation with

9

Sam Hodge. At retrial, this evidence can be relevant, probative, and is not overly prejudicial to Appellant. See Id. at 889.

The interaction between Appellant and K.E. is relevant to explain why Appellant and Hodge got into a fight at the apartment complex. The evidence indicates that Appellant's fight with Hodge was the catalyst for the assaults later in the evening. Thus, since the fight with Hodge was critical to explaining why Appellant may have assaulted the victims, it was completely relevant for some purpose other than to prove criminal disposition of the accused. Id. at 889. This evidence was also probative. Evidence of prior bad acts is probative if "the jury could reasonably infer that the prior bad acts occurred and that [the defendant] committed such acts." Parker v. Commonwealth, 952 S.W.2d 209, 214 (Ky. 1997). Here there was adequate testimony from N.S. and Jackson that a jury could infer that Appellant did in fact have inappropriate contact with K.E. or at least that people at the apartment complex thought there was inappropriate contact. Appellant's counsel even mentioned that others thought there was inappropriate contact between K.E. and Appellant in his opening argument.

Finally this evidence's probative value substantially outweighs any prejudice towards Appellant. Appellant was the first to mention the incident between him and K.E. during his opening argument and thus any prejudice against him is low. Additionally, the evidence of Appellant's behavior with K.E. was critical to understanding how the melee began. Thus, at retrial, the evidence of Appellant's behavior towards K.E. would be admissible under KRE

10

404(b)(1) since it shows his motive for assaulting the victims and shows how the ultimate attack came about.

B. Alleged gang tattoos

Appellant next argues that the admission of evidence regarding his tattoos constituted improper character evidence. At trial, N.S. testified that Appellant had threatened to kill him and T.H. The Commonwealth subsequently asked N.S. if Appellant had any tattoos. N.S. replied that Appellant had several tattoos which he thought indicated that Appellant was in a gang. Appellant objected and requested a jury admonishment. The trial court overruled the objection and provided no admonishment. Later in the trial the Commonwealth asked Appellant if he had certain tattoos. Appellant admitted he had the tattoos.

Kentucky does not have a case on point for this issue. Other states, however, have held that evidence regarding a defendant's tattoos is generally irrelevant if the identification of the defendant is not in issue. State v. Steele, 510 N.W.2d 661 (S.D.1994). It is also error if evidence of a tattoo is used to establish that the defendant acted in conformity with the message of the tattoo. Boliek v. Delo, 912 F.Supp. 1199 (W.D.Mo.1995), rev'd due to procedural default sub nom Boliek v. Bowersox, 96 F.3d 1070, 1071 (8th Cir.1996). In this matter the identification of Appellant was not in question. The evidence of the tattoos could only be used to indicate that Appellant had acted in conformity with his potential gang affiliations. Such use of this evidence is prohibited under KRE 404(b). At retrial, evidence regarding Appellant's tattoos

11

should only be used for identification purposes if necessary and no testimony regarding his potential gang affiliation should be admitted.

C. Evidence of Appellant's terroristic threatening of N.S. and T.H.

Appellant next argues that the admission of testimony from N.S. and Jackson that Appellant had threatened to kill N.S. and T.H. was error. Appellant argues that the incident with N.S. and T.H. had nothing to do with the ultimate assaults which occurred several hours later. Appellant believes that this evidence implied that he had a violent nature and made the jury more likely to reject his self-defense theory. Appellant did object to the substance of N.S. and Jackson's testimony.

This evidence is relevant to show the series of events which led to the criminal acts later in the day. It indicates that the entire cause of the assault is Appellant's interaction with K.E. This evidence shows the beginning of the conflict with K.E.'s family members that helped lead to the later assaults. Additionally, this evidence helps rebut Appellant's self-defense theory. The evidence is probative because there is adequate testimony to support that an altercation occurred between Appellant, T.H., and N.S. Finally, this evidence is not overly prejudicial. The evidence of this altercation is admissible under KRE 404(b) because it shows potential motive and because it is intertwined with other evidence crucial to the Commonwealth's case. Thus, at retrial, evidence regarding Appellant's confrontation with N.S. and T.H. is admissible.

D. Informing the jury that Appellant had a criminal record

Appellant next argues that the trial court impermissibly admitted evidence regarding his past criminal record. Detective Lieutenant Doug Nelson of the Somerset Police Department testified for the Commonwealth. He testified that he received Appellant's name as a prime suspect in the attack from police officers working the crime scene at the apartments. He then testified that he went to the Pulaski County Detention Center and obtained a photograph of Appellant. Appellant immediately moved for a mistrial which was overruled. Appellant then requested an admonition which after some deliberation was granted.

The testimony of Detective Lieutenant Nelson was inappropriate. The fact that Appellant's picture was at the local jail was not relevant to the trial and could potentially prejudice the jury. Although the admonition was sufficient to remove any prejudice, at retrial, this evidence should not be admitted.

E. Notice of the Commonwealth's intent to use prior bad acts

One of the headings in Appellant's brief mentioned that the Commonwealth did not provide notice to him pursuant to KRE 404(c) that it intended to introduce evidence under KRE 404(b). However, Appellant's brief fails to pursue this argument. Therefore we treat this allegation of error as waived. Smith v. Commonwealth, 567 S.W.2d 304, 306 (Ky. 1978).

## V. Amendment of the Indictment

Finally, we address Appellant's argument that the trial court erred when it granted the Commonwealth's motion to amend the indictment. In the

13

original indictment, the grand jury charged, in a single count, that Appellant "[c]ommitted the offense of Assault, First Degree..." against four named persons. By the words "the offense of Assault, First Degree" it is clear that only one offense was charged. At arraignment, the Commonwealth's Attorney moved to amend the indictment to state four separate counts of assault, each relating to a single victim. The motion was granted.

RCr 6.18 provides that two or more offenses may be charged in the same indictment "in a separate count for each offense, if the offenses are of the same or similar character." In order to charge multiple offenses in a single indictment, the Grand Jury must set forth each offense in a separate count. The indictment returned by the grand jury contained only one count, and therefore, under RCr 6.18, charged Appellant with but a single offense of first degree assault, by stabbing any of the four person named therein.

RCr 6.16 states in pertinent part:

> (t)he court may permit an indictment, information, complaint, or citation to be amended any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

The amendment of the indictment clearly added three additional offenses, and therefore violates RCr 6.16. Since we are reversing on other grounds and remanding for a new trial, we direct that, unless the matter is resubmitted to a grand jury which returns an indictment that conforms to RCr 6.18, Appellant may be retried only for the single offense of assault, first degree.

14

## VI. Conclusion

Appellant's other allegations of error are either meritless or specific to the prior trial and we will not address them since he is entitled to a retrial.

For the foregoing reasons, the judgment and sentence of the Pulaski Circuit Court is reversed and the case is remanded for a new trial.

All sitting. Minton, C.J., Abramson, Cunningham, Noble, Schroder and Venters, JJ., concur. Scott, J., concurs in part and dissents in part by separate opinion.

COUNSEL FOR APPELLANT:

Thomas More Ransdell
Assistant Public Advocate
Dept. of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Henry Albert Flores, Jr.
Assistant Attorney General
Office of Criminal Appeal
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601

# Supreme Court of Kentucky

## 2007-SC-000195-MR

MARK A. COLYER, JR.                                                APPELLANT


ON APPEAL FROM PULASKI CIRCUIT COURT
V.        HONORABLE JEFFREY THOMAS BURDETTE, JUDGE
NO. 06-CR-00203


COMMONWEALTH OF KENTUCKY                                  APPELLEE


## CONCURRING IN PART AND DISSENTING IN PART

## OPINION BY JUSTICE SCOTT

I must respectfully dissent in part as I do not believe the evidence here is sufficient to support an inference that Appellant did not know what he was doing, otherwise how could he have done it? Moreover, to the extent Mishler v. Commonwealth, 556 S.W.2d 676, 680 (Ky. 1977) supports a voluntary intoxication instruction under these facts, I would overrule it. Nor, do I believe that the original indictment could have meant anything other than Appellant stabbed four (4) people. Thus, I cannot agree that a new indictment is required.