318 Ga. 393
FINAL COPY

S23A0854. JACKSON v. THE STATE.
S23A0855. CASTLE v. THE STATE.

BETHEL, Justice.

Following the deadly shooting of Norman Ray Moore, Jr. ("Norman"), at a party in Bartow County, Dedric Jackson and Dimitrius Castle were jointly tried and convicted of felony murder and other related crimes.[1] On appeal, Jackson contends that he received ineffective assistance in several ways. Specifically, Jackson

---

[1] The crimes occurred on March 13, 2010. On October 21, 2010, a Bartow County grand jury indicted Castle, Dedric Jackson, and Leondris Jackson for malice murder (Count 1), felony murder predicated on aggravated assault for fatally shooting Norman (Count 2), aggravated assault with a deadly weapon for non-fatally shooting Norman in the forearm (Count 3), possession of a firearm during the commission of a crime (Count 4), and battery (Count 5). Leondris Jackson's case was resolved in juvenile court and is not part of this appeal. Following a joint trial from November 14-17, 2011, the jury found Jackson and Castle not guilty of malice murder (Count 1), but guilty of all other counts. The trial court sentenced Jackson and Castle to serve life in prison on Count 2, twenty years in prison on Count 3 to be served consecutively to Count 2, five years in prison on Count 4 to be served consecutively to Count 2, and twelve months on Count 5.

Jackson and Castle timely filed a joint motion for new trial, which they amended several times through new counsel. Following a hearing on June 28, 2022, the trial court denied the amended motion on July 14, 2022. Jackson and Castle then filed timely notices of appeal, and their cases were docketed to the August 2023 term of this Court and submitted for a decision on the briefs.

alleges that his trial counsel: withdrew his request for a jury charge on justification and failed to request a charge on defense of habitation; failed to object to evidence of a prior crime and of bad character; failed to object to certain witness testimony; and failed to object to two jury instructions. Jackson further asserts that the cumulative prejudice resulting from these actions and omissions violated his right to effective assistance of counsel. Finally, Jackson argues that the trial court erred by not charging the jury sua sponte on what he characterizes as his sole defense of justification.

Castle contends the following: that the evidence at trial was insufficient to sustain his conviction for battery (Count 5); that trial counsel rendered ineffective assistance by failing to request jury instructions on justification and related principles and accomplice corroboration and by calling a cumulative defense witness who opened the door to impeachment evidence of Castle's defense theory; and that the trial court erred by failing to merge the aggravated assault verdict (Count 3) into the felony murder conviction (Count 2). For the reasons detailed below, each of Jackson's and Castle's

2

claims fail. Accordingly, we affirm in both cases.

*Background Facts*[2]

The evidence presented at trial showed the following.[3] Appellants Castle and Jackson, who are brothers, lived with their mother in an apartment complex in Cartersville. On the evening of March 13, 2010, they held Jackson's eighteenth birthday party there. Leondris Jackson ("Leondris"), who was the appellants' younger cousin, attended the party, along with Jackson and Castle.

Norman, the victim, came to the party with his cousin, Trinis Moore ("Trinis"), and a friend, Algernon Shaw. When Norman's group arrived at the complex in an automobile, Norman rolled down his window and attempted to talk to a girl on the sidewalk outside of the apartment building. A group of people, including Jackson, Castle, and Leondris, were mingling on the apartment's front porch and just inside the door. According to Trinis, someone in Castle and

---

[2] The background facts for both cases are consolidated because the appellants were jointly tried.

[3] Because the appellants were tried in 2011, the provisions of Georgia's former Evidence Code apply here.

Jackson's group taunted Norman's group, daring them to get out of the car.

Norman and Trinis exited the car, shouting "east side" and "on the E," which were references to their gang. Jackson and Castle's group walked out to meet them, with some shouting "BBS"[4] as they approached Norman's group. Trinis testified that when they exited the vehicle, Norman cocked his gun, pointed the gun down, and approached Jackson and Castle's group. The two groups met between the sidewalk and driveway. Several other witnesses either heard or saw Norman cock his gun, and Leondris's sister observed Norman put the gun in his pants. After seeing Norman's gun, Jackson and Castle ran into their apartment to retrieve their own guns. Defontae Leonard, who also attended the party, testified that Castle's weapon was a "40" and Jackson's a 9-millimeter.

When Jackson and Castle reemerged, they confronted Norman

---

[4] Testimony at trial established that Jackson and Castle were members of a group known as "BBS," which stood for "Bottom Boy Survivors." Leondris's sister testified that there were "probably like ten" people in BBS, and several lay witnesses characterized the group as a gang.

and Trinis. Jackson began arguing with Norman, while a few feet away, Castle argued with Trinis. Alex Florez, a friend of Castle and Jackson, testified that Castle, Jackson, and Trinis carried guns during the confrontation, but that Norman was not holding a weapon. Several witnesses testified that, as the argument escalated, they saw Jackson hit Norman in the head with the gun, and Jackson and Norman then "got to fighting" on the ground. A crowd formed around Norman, with several people kicking and punching Norman. A family member of Trinis separated him from Castle. Florez then pulled Jackson off Norman.

Florez and Leonard testified that, when Jackson stood up, he shot Norman. Florez stated that Castle came "from around from where he was" near the truck, about ten or fifteen feet away, and shot Norman a second time. Leonard testified that this second shot hit Norman in the chest. Castle and Jackson's aunt testified that she "might have" seen Castle shoot someone, though she could not be sure. This was not the only version of events recounted at trial. Another witness testified that she saw Leondris hit Norman in the

5

face with the gun, and three witnesses claimed that they saw Leondris shoot Norman.

At the scene of the shooting, police discovered Jackson's driver's license at Norman's feet. Police also discovered a .40-caliber Smith & Wesson bullet in the road, as well as a Winchester 9-millimeter Luger shell casing. After the shooting, Jackson asked a friend to "hold the gun," but the friend refused.

Norman was transported to the hospital, where he was pronounced dead. The medical examiner testified that Norman had an abrasion to his face caused by a blunt force injury, a non-fatal gunshot wound to his left forearm, and a fatal gunshot wound to his chest. At the hospital, a loaded semiautomatic Glock handgun was discovered tucked into the front of Norman's shorts, and an EMT testified that the weapon was not visible during transport.

A witness later told an investigator that, after the shooting, she saw Leondris and Castle sneak out the back of the apartment with Leondris's father. Later that evening, a car owned by Leondris's father was seen leaving the complex, and the occupants of the

6

vehicle's back seat had their heads ducked down. Police discovered a brochure for a 9-millimeter handgun in the vehicle's trunk,[5] as well as Winchester 9-millimeter Luger bullets.

*Case No. S23A0854*

1. Jackson argues that he received ineffective assistance from his trial counsel in numerous regards. To prevail on his claims of ineffectiveness, Jackson

> has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result. To prove deficient performance, [an appellant] must show that his trial counsel acted or failed to act in an objectively reasonable way, considering all of the circumstances and in light of prevailing professional norms. To prove resulting prejudice, [an appellant] must show a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

(Citation and punctuation omitted.) *Floyd v. State*, 307 Ga. 789, 799 (4) (837 SE2d 790) (2020). "A strong presumption exists that counsel's conduct falls within the broad range of professional

---

[5] Leondris's father disclaimed ownership of a 9-millimeter handgun.

7

conduct." (Citation and punctuation omitted.) *Ford v. State*, 298 Ga. 560, 566 (8) (783 SE2d 906) (2016). With these principles in mind, we consider each of Jackson's claims of ineffective assistance in turn.

(a) Jackson first argues that his trial counsel performed deficiently by withdrawing his request for a jury charge on justification. We disagree.

At the hearing on the motion for new trial, trial counsel testified that, based on the evidence presented at trial, he chose to pursue the "better" defenses of mere presence and association, arguing that someone else was responsible for the shooting. Counsel testified that he did not pursue a justification defense because Jackson had not admitted to firing any shots generally, let alone in self-defense, and such an admission was a "strong part" of pursuing the defense.

On appeal, Jackson argues that trial counsel's reasoning for withdrawing the charge was unsound because there was witness testimony that Jackson shot Norman, and Jackson's trial counsel testified that evidence showing that Jackson had fired shots during

8

the altercation would have changed his mind about the justification defense. Jackson further argues that because he was indicted as a party to the crime, he need not have actually fired the fatal shot at all. One of his co-defendants could have fired the fatal shot, and had he been justified in doing so, that defense would have been available to Jackson.

However, properly assessing the performance of counsel "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U. S. 86, 110 (IV) (A) (1) (131 SCt 770, 178 LE2d 624) (2011) (citing *Strickland v. Washington*, 466 U. S. 668, 688 (III) (A) (104 SCt 2052, 80 LE2d 674) (1984)). See also *Head v. Carr*, 273 Ga. 613, 615-616 (4) (544 SE2d 409) (2001*)* ("To show deficient performance, [a claimant] must demonstrate that trial counsel's performance was not reasonable under the circumstances confronting them before and during the trial, without using hindsight."); *Shaw v. State*, 292 Ga. 871, 875 (3) (a) n.7 (742 SE2d 707) (2013) ("[W]e are not limited in our assessment of the objective

reasonableness of lawyer performance to the subjective reasons offered by trial counsel for his conduct. If a reasonable lawyer might have done what the actual lawyer did — whether for the same reasons given by the actual lawyer or different reasons entirely — the actual lawyer cannot be said to have performed in an objectively unreasonable way."). "Trial counsel's decision about which defense to present is a matter of trial strategy," *Floyd*, 307 Ga. at 802 (4) (b), and "will generally be considered reasonable if supported by evidence in the record," *Wilson v. State*, 313 Ga. 319, 323 (2) (b) (869 SE2d 384) (2022). "Unless the choice of strategy is objectively unreasonable, such that no competent trial counsel would have pursued such a course, we will not second-guess counsel's decisions in this regard." (Citation and punctuation omitted.) *Butler v. State*, 313 Ga. 675, 685 (4) (c) (872 SE2d 722) (2022).

Trial counsel's decision to pursue mere presence and association defenses in this case was not objectively unreasonable, as the record reflects that multiple witnesses testified to seeing Leondris, not Jackson, strike and shoot Norman, and Jackson did

not admit to the shooting. And "[t]he fact that the chosen strategy failed while another reasonable strategy remained unemployed does not render trial counsel deficient." *State v. Tedder*, 305 Ga. 577, 584 (826 SE2d 30) (2019). See also *Muller v. State*, 284 Ga. 70, 72 (3) (663 SE2d 206) (2008) (holding that counsel's decision to withdraw request for charge on justification not deficient because "[a]lthough others might have pursued a different strategy, that withdrawal did not fall below an objective standard of reasonableness" (citation and punctuation omitted)). Moreover, a self-defense instruction would have been inconsistent with the mere presence defense, and counsel generally is not deficient for failing to request jury instructions that are contrary to a reasonably chosen defense strategy. See *Gaston v. State*, 307 Ga. 634, 637 (2) (a) (837 SE2d 808) (2020) ("[I]t is rarely an unreasonable strategy not to pursue defenses that logically conflict."); *Williams v. State*, 292 Ga. 844, 853 (3) (f) (742 SE2d 445) (2013) (counsel's decision not to request instruction on self-defense was not deficient where the instruction was inconsistent with the defense theory). Accordingly, this argument fails.

11

(b) Jackson next argues that trial counsel was deficient because he failed to consider and request a charge on defense of habitation. Jackson argues that slight evidence[6] supported such a charge because Norman and his companions came to Jackson's home and "started trouble" by brandishing a loaded gun. Jackson further argues that, at the hearing on the motion for new trial, defense counsel agreed that it could have been possible to argue a defense of habitation before the jury.

OCGA § 16-3-23 authorizes the use of force reasonably believed necessary to prevent or terminate another's unlawful entry into or attack upon a habitation. A person is authorized to use deadly force only if, as applicable here,

> [t]he entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence[.]

---

[6] See *Coleman v. State*, 286 Ga. 291, 297 (6) (687 SE2d 427) (2009) ("[A] request to charge the jury is appropriate where there is any evidence, however slight, on which to predicate it.").

12

OCGA § 16-3-23 (1). However, "[w]here there is no evidence that the victim was attempting to enter or attack the habitation at the time he was injured by the defendant, the defense of habitation is not available." *Coleman v. State*, 286 Ga. 291, 298 (6) (687 SE2d 427) (2009).

Here, the record is clear that the confrontation between Norman and Jackson that culminated in the fatal shooting occurred outside Jackson's home, in an area near the complex's parking lot.[7] Moreover, despite Jackson's suggestion that the defense could have applied, our review of the record uncovers no evidence that Norman entered Jackson's habitation at any point during this confrontation, that he made any attempt to enter Jackson's habitation, or that he threatened to enter Jackson's habitation. And Jackson directs us to no evidence supporting a reasonable belief on Jackson's part that any of those things happened in conjunction with a threat to assault

---

[7] Jackson does not argue that the confrontation occurred on the curtilage of the home.

or do personal violence to any person inside the residence.[8] Accordingly, OCGA § 16-3-23 was unavailable to him as a defense. See *Coleman*, 286 Ga. at 298 (6); *Walker v. State*, 301 Ga. 482, 486 (2) (b) (801 SE2d 804) (2017). And because a request for a charge on defense of habitation would have failed, trial counsel did not perform deficiently in failing to request such a charge. See *Coleman*, 286 Ga. at 298 (6) (a).

(c) Jackson next argues that his trial counsel was deficient in failing to object to the testimony of Tonya Hall, who recounted the details of a verbal altercation with Castle and Jackson. On appeal, Jackson contends that this testimony amounted to evidence of his "bad character." This argument fails.

At trial, Hall testified that, on the night of the crimes, she stopped at the apartment complex, leaving her children in her vehicle while she quickly went inside the apartment. When Hall returned to the vehicle, her son was "having a conversation" or

---

[8] There is also no indication that Jackson was in a vehicle during the confrontation.

14

"words" with Castle. Hall testified that Castle swore repeatedly at her and her son, and said, "Come on, I got something for you," and "I got something for y'all a\*\*," while reaching behind his back; on this basis, Hall believed Castle had a gun. Hall also testified that, while she called 911 to report the incident, Castle said, "That's all that b\*\*\*h a\*\* do is just call the police on us back and forth." While Hall's testimony primarily related to her confrontation with Castle, she also testified that Jackson came outside during this confrontation and said that "they didn't want to get their b\*\*\*h a\*\* beat down again." On cross-examination, trial counsel elicited testimony that Hall had previously called the police five or more times regarding Castle and Jackson, though she claimed that the police never did anything in response and made it seem like she and her family were "villains" or "bad people."

Even assuming that this testimony was objectionable, Jackson has not shown prejudice under the facts of this case. Indeed, multiple eyewitnesses placed Jackson at the scene of the murder and testified that they saw him shoot Norman. In light of the strong

evidence against him, "[t]here is not a reasonable probability that the trial result would have been different in the absence" of Hall's testimony. See, e.g., *Stallworth v. State*, 304 Ga. 333, 335 (2) (a) (818 SE2d 662) (2018) (no reasonable probability of different trial result where three eyewitnesses placed appellant and co-defendant at crime scene and appellant was seen "violently arguing with the victim prior to the shooting").

(d) (i) Jackson next argues that trial counsel was deficient in failing to object to the testimony of three witnesses who saw Jackson with a gun prior to the incident.[9] Jackson contends that, because the weapons were not linked to the murder, the testimony was irrelevant and constituted inadmissible propensity evidence. Again, we disagree.

As an initial matter, no bullets were recovered from Norman's body and it was unclear from the wounds what caliber of gun was

---

[9] Specifically, one witness testified that he saw Jackson with a gun the day before the crimes, a second witness testified that he saw Jackson with a .22-caliber pistol a few weeks before the crimes, and a third witness testified that he saw Jackson holding a 9-millimeter handgun during the confrontation with Norman.

used to shoot him. However, a 9-millimeter casing was found at the scene, and one of the witnesses testified to having seen Jackson holding a gun of the same caliber during the confrontation, while a second testified to seeing Jackson with a gun of an unspecified caliber the day before the shooting. This evidence is "relevant to a disputed issue at trial" — that is, whether Jackson did, in fact, carry, brandish, and fire a handgun at the time of the party — "inasmuch as it tended to show that he had access to such a gun." *Thomas v. State*, 293 Ga. 829, 833 (4) (750 SE2d 297) (2013). And it does not constitute propensity evidence. See *Nichols v. State*, 282 Ga. 401, 405 (2) (651 SE2d 15) (2007) ("[I]n order to show a defendant has a propensity for certain behavior, the State must introduce evidence of the defendant's other similar behavior."). Cf. *Palmer v. State*, 271 Ga. 234, 240 (8) (c) (517 SE2d 502) (1999) (deputy's testimony that he pulled defendant over several years before the murder and noticed a rifle in the back seat of the defendant's car, which was the same weapon used in a later murder, was not similar transaction evidence but was relevant evidence that defendant possessed

murder weapon).

Moreover, to the extent Jackson argues that *Davis v. State*, 301 Ga. 397 (801 SE2d 897) (2017) and *Moore v. State*, 294 Ga. 682 (755 SE2d 703) (2014) held that evidence tending to show a defendant possessed a weapon prior to the crimes at issue is categorically inadmissible, he is incorrect. In *Davis*, we said that any error in the admission of "so-called similar transaction evidence" regarding a defendant's possession of a firearm two years prior to the shooting and his statement about it some months beforehand was harmless given the strength of the other evidence in the case. 301 Ga. at 400-401 (3). And in *Moore*, although we held that evidence of appellant's tattoo depicting a gun was impermissibly offered as evidence of appellant's propensity to carry or use a firearm, we ultimately concluded, under the facts of that case, that its erroneous admission was harmless and did not mandate a new trial. See 294 Ga. at 685-686 (3). Accordingly, Jackson's counsel was not deficient for failing to object to the testimony on these grounds.

As for the witness testimony that Jackson was seen with a .22-

caliber pistol in the few weeks leading to the murder, even if we assume that such testimony was inadmissible and that trial counsel should have objected, we cannot say that Jackson has established a reasonable probability that, had counsel done so, the outcome of his trial would have been different. Jurors also heard the other strong evidence presented at trial, including testimony from eyewitnesses who saw Jackson shoot Norman. See *Kitchens v. State*, 289 Ga. 242, 244 (2) (b) (710 SE2d 551) (2011) (no prejudice in failing to object to testimony where there was strong evidence of appellant's guilt, including several eyewitnesses who testified that appellant shot the victim). For these reasons, Jackson's claim of ineffective assistance on these grounds fails.

(ii) Jackson also argues that trial counsel should have objected to testimony about Jackson having a Taser prior to the shooting, but Jackson fails to point to any specific witnesses who testified to ever seeing Jackson with such a device. To the extent Jackson points to the record, he relies only on portions that involve witnesses who testified that they saw individuals other than Jackson with a Taser

prior to the murder. We cannot say that forgoing an objection to testimony about other individuals having a Taser was so patently unreasonable that no competent lawyer would have made the same decision. See *Jackson v. State*, 317 Ga. 95, 105 (2) (c) (891 SE2d 866) (2023) ("[I]t is well established that the burden is on the party alleging error to show it by the record." (citation and punctuation omitted)). Cf. *Durham v. State*, 292 Ga. 239, 242 (4) (a) (734 SE2d 377) (2012) (decision not to object to hearsay testimony that was not harmful to the defendant was trial strategy that fell "within the range of reasonable professional conduct").

(e) Jackson also argues that trial counsel should have objected to testimony regarding his gang membership because the crimes were not gang-related and the testimony was "highly prejudicial." Specifically, Jackson argues that trial counsel should have objected to testimony that he and Castle were members of BBS and that the group members shouted "BBS" when they confronted Norman and his companions, as well as testimony about the meaning of BBS and its affiliated colors. We disagree that trial counsel's failure to object

20

on these grounds was objectively unreasonable.

The State was permitted

[to] present evidence of a defendant's motive for allegedly committing a crime. If that motive directly involves appellant's membership in "an unsavory group," the relevant evidence does not become immaterial because it incidentally places appellant's character or reputation in evidence.

(Citation omitted.) *Marshall v. State*, 275 Ga. 740, 746 (10) (571 SE2d 761) (2002). The evidence at trial showed that, immediately preceding the conflict that resulted in Norman's death, Norman and his companions called out their group identifier ("east side") and Jackson and his companions responded with their own identifier ("BBS"). Accordingly, the testimony at issue provided evidence of a possible motive for the conflict and would have been admissible for this purpose. See id. Moreover, under the former Evidence Code, "[t]he State [was] entitled to present evidence of the entire res gestae of a crime," which would include the testimony regarding the gang identifiers that were declared by the opposing groups immediately prior to the murder, "even if the defendant's character [was]

incidentally placed in issue." *Corza v. State*, 273 Ga. 164, 166 (2) (539 SE2d 149) (2000). Trial counsel was not deficient for failing to make a meritless objection. See *Watson v. State*, 303 Ga. 758, 763 (3) (814 SE2d 396) (2018).

(f) Jackson next argues that his counsel performed deficiently by failing to object to testimony that Florez was threatened after giving a statement to law enforcement officials against Jackson and Castle. Jackson asserts that the testimony was improper because there was no evidence that the threat was "made by," "connected to," or "directed by" Jackson or was otherwise related to him. Jackson's argument fails because he has not established the requisite prejudice.

Florez testified at trial that he was friends with Castle and Jackson, was a member of BBS, was at the party, and witnessed and participated in the fight. Florez conceded that he initially lied to the police when he was first interviewed, but stated that he later gave a second, honest statement implicating the defendants to the police. Florez further testified that, after making the second statement, he

received phone calls saying that, if he testified, "they were going to get me." Florez did not explain who "they" were, nor did he identify the caller.

While evidence that a defendant has attempted to obstruct justice, including by intimidating a witness, can be relevant circumstantial evidence of guilt, see *Morrell v. State*, 313 Ga. 247, 256 (2) (a) (869 SE2d 447) (2022), there was no evidence that Jackson or Castle made or directed the calls here. And although a trial court has discretion to admit testimony of an anonymous threat to explain a witness's conduct on the stand, see *Coleman v. State*, 278 Ga. 486, 487-488 (604 SE2d 151) (2004), it does not appear from the record that this testimony was used to explain Florez's conduct.

Assuming without deciding that trial counsel's failure to object was deficient, Jackson has not established that he was prejudiced by this testimony. Florez's reference to the anonymous threats was fleeting, the threats were not tied to Jackson or Castle, and it does not appear from the record, nor does Jackson argue, that there was any other mention of these threats. In light of the other evidence

presented at trial, including testimony from eyewitnesses who saw Jackson shoot Norman, we cannot say that Jackson has established a reasonable probability that, had trial counsel objected to this evidence, the outcome of his trial would have been different. See *Atkinson v. State*, 301 Ga. 518, 528 (6) (j) (801 SE2d 833) (2017). Accordingly, this argument fails.

(g) Jackson also contends that his trial counsel performed deficiently by failing to object to two jury instructions; the first instructed the jury that it could consider the intelligence of witnesses in determining their credibility and the second concerned the resolution of conflicts in witness testimony. These arguments fail.

(i) Citing *McKenzie v. State*, 293 Ga. App. 350 (667 SE2d 142) (2008), Jackson asserts that the trial court erred by charging the jury that intelligence is a factor in determining credibility. Prior to *McKenzie*, the pattern jury charge identified intelligence as a factor

that could inform the jury's determination of credibility.[10] *McKenzie* suggested that this portion of the charge was problematic and confusing, though not "so harmful as to require a reversal"; after that 2008 decision, the reference to intelligence in the jury instruction was removed. Id. at 352 (2). See also Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.) § 1.31.10 (2023).

Since *McKenzie*, this Court also has expressed concern with respect to this portion of the charge, but we have held that, "even assuming the better practice is to omit intelligence as one of the factors in the credibility charge, its inclusion is not reversible error." *Howard v. State*, 288 Ga. 741, 747 (6) (707 SE2d 80) (2011). See also *Redding v. State*, 311 Ga. 757, 763 (4) (858 SE2d 469) (2021); *Moore v. State*, 306 Ga. 532, 535 (2) (c) (832 SE2d 384) (2019); *Ingram v.*

---

[10] The pattern charge provided:

> In deciding credibility, you may consider all of the facts and circumstances of the case, the manner in which the witnesses testify, *their intelligence*, their interest or lack of interest in the case, their means and opportunity for knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their testimony, and the occurrences about which they testify.

(Emphasis supplied.) Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.) § 1.31.10 (2007).

25

*State*, 297 Ga. 854, 857 (4) (778 SE2d 781) (2015); *Gamble v. State*, 291 Ga. 581, 583 (4) (731 SE2d 758) (2012). And because the inclusion of the intelligence portion of the instruction is not itself reversible error, Jackson cannot show the prejudice necessary to succeed on his claim that counsel rendered ineffective assistance in failing to object to the charge, and this claim fails. See *Howard*, 288 Ga. at 747 (6).

(ii) Jackson's claim that his trial counsel was ineffective for failing to object to the jury charge on conflicts in testimony, which he contends was akin to the charge disapproved in *Noggle v. State*, 256 Ga. 383, 386 (4) (349 SE2d 175) (1986), also lacks merit. The relevant portion of the charge given in this case instructed the jurors that:

> [I]f you should find that there is a conflict in the testimony of the witnesses or a conflict between a witness or witnesses, it is your duty to settle this conflict if you can without believing that any witness has made a false statement. If you cannot do this, it then becomes your duty to believe that witness or those witnesses which you think are best entitled to belief. In short, it is for you alone to determine what testimony you will believe and what testimony you will not believe.

The court's jury charge on conflicts in the evidence largely tracked the pattern jury charge that was in effect at the time of Jackson's trial in 2011:

> When you consider the evidence in this case, if you find a conflict, you should settle this conflict, if you can, without believing that any witness made a false statement.
> If you cannot do so, then you should believe that witness or those witnesses whom you think are best entitled to belief.

Pattern Charge § 1.31.20, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed. 2007).[11] And as we previously noted in *Smith v. State*, 308 Ga. 81, 87-89 (3) (839 SE2d 630) (2020), because this instruction had been approved by controlling case law at the time of Jackson's trial in 2011, we cannot say that Jackson's counsel performed in an objectively unreasonable way by failing to object. See id. Accordingly, Jackson's claim of ineffective assistance of

---

[11] This pattern jury charge was in effect until 2013. See *Smith v. State*, 308 Ga. 81, 89 (3) n.6 (839 SE2d 630) (2020). We have since noted that more recent editions of the Suggested Pattern Jury Instructions now state that "there is no support for this former charge in current law." (Emphasis omitted.) Id. at 89 (3).

27

counsel fails.

(h) Finally, Jackson contends that, taken together, the cumulative effect of trial counsel's alleged deficiencies prejudiced him such that his convictions should be reversed. "[I]t is the prejudice arising from counsel's errors that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum." *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2007), overruled on other grounds, *State v. Lane*, 308 Ga. 10, 23 (4) (838 SE2d 808) (2020).

We assumed deficiency in Division 1 (c), (d) (i), (f), and (g) relating to counsel's failure to object to evidence of Jackson's character and testimony regarding Jackson's possession of a firearm in the weeks leading to the murder and the anonymous threats, and the portion of the jury instructions pertaining to intelligence. However, given our other conclusions above regarding the strength of the evidence against Jackson, including voluminous eyewitness testimony, we cannot conclude that, absent these errors, a different outcome would have been reasonably probable. Jackson has thus

28

failed to establish that the combined prejudicial effect of these assumed errors requires a new trial. See *Jackson*, 317 Ga. at 106-107 (4). Therefore, Jackson's claim of cumulative prejudice fails.

2. During the charge conference, Jackson withdrew his previous request for a jury charge on justification. He now contends that the trial court nonetheless should have given such a charge sua sponte because it was his sole defense. Because Jackson did not object to the trial court's failure to give this instruction at trial, we review this claim only for plain error. See *State v. Kelly*, 290 Ga. 29, 31-32 (1) (718 SE2d 232) (2011).

> In order to reverse a conviction on this ground, all four prongs of the standard adopted in *Kelly* must be met: the instruction, or in this case the failure to give it, was erroneous; the error was obvious; the failure to give the instruction likely affected the outcome of the proceedings; and the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Hoffler v. State*, 292 Ga. 537, 542 (4) (739 SE2d 362) (2013); *Kelly*, 290 Ga. at 33 (noting that the "error or defect" must not have been "intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant"). Jackson's claim regarding a jury instruction on

29

justification falters at the first step of the plain error analysis.

During the first few days of trial, Jackson filed a request that the court give a charge on justification. However, at the charge conference after the close of evidence, Jackson explicitly withdrew his request for a justification instruction through counsel. Thus, Jackson affirmatively waived any right to a justification charge and cannot show plain error in this regard, and we need not address the remaining prongs of the plain error standard. See *Walker v. State*, 301 Ga. 482, 485 (2) (a) (801 SE2d 804) (2017); *Brown v. State*, 298 Ga. 880, 882 (3) (785 SE2d 512) (2016). Accordingly, this enumeration fails.

*Case No. S23A0855*

3. On appeal, Castle argues that the evidence presented at trial was insufficient to sustain his conviction for battery based on the act of striking Norman in the face with a handgun (Count 5) because the evidence showed that either Jackson or Leondris pistol-whipped Norman. We disagree.

When reviewing the sufficiency of evidence, the proper inquiry

is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). We view the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). Castle was charged individually and as a party to the crime of battery. See OCGA § 16-2-20 (a). "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime." (Citation and punctuation omitted.) *Williams v. State*, 304 Ga. 658, 661 (1) (821 SE2d 351) (2018). And "[w]hether the evidence supports such an inference is a question for the jury." *Mohamed v. State*, 307 Ga. 89, 90 (1) (834 SE2d 762) (2019).

Castle asserts that the evidence failed to establish that he was party to the crime of battery because, he says, "there was no evidence that [he] facilitated or encouraged the pistol-whipping

performed by a third party." Castle is correct that "a person's mere presence at the scene of the crime and mere approval of the criminal act are insufficient to establish that [he] was a party to the crime," *Grant v. State*, 298 Ga. 835, 837 (1) (785 SE2d 285) (2016), but there was evidence from which the jury could infer more than Castle's mere presence or approval.

Indeed, several witnesses testified that, when Norman fell to the ground after being pistol-whipped, Castle joined in attacking him, and that Castle shot Norman while he was lying on the ground after being beaten. And the trial court properly instructed the jury on the law of party to a crime and mere presence. It thus "makes no difference here" that the evidence showed that someone else was responsible for pistol-whipping Norman; Castle's "conduct supports the jury's conclusion that he shared an intent" to batter Norman. *Mohamed*, 307 Ga. at 90 (1). Accordingly, Castle's sufficiency argument fails.

4. Castle next argues that his trial counsel was constitutionally ineffective in three ways: (1) by failing to request jury instructions

on justification and related principles; (2) by failing to request a jury instruction on accomplice corroboration; and (3) by calling a defense witness, Trinis, whose testimony was unnecessary and who opened the door to substantial impeachment of Castle's defense theory. His arguments fail.

(a) At trial, Castle pursued an identity defense. On appeal, however, Castle argues that, because "any reasonable construction of the evidence placed [him] squarely within Georgia's party to a crime doctrine" with respect to the shooting (going so far as to say that "overwhelming evidence supported Castle's presence at the scene, armed, and involved in the altercation that eventually led to the shooting"), justification was his only legally viable defense. Castle asserts that trial counsel's failure to pursue a justification defense was based on a misunderstanding of the law.

In particular, in his motion for new trial, Castle pointed to his counsel's statement at trial that he did not anticipate putting Castle on the stand and therefore did not anticipate asserting self-defense. On appeal, Castle focuses on trial counsel's testimony at the motion-

33

for-new-trial hearing in which trial counsel indicated that he did not believe he could pursue a justification defense without Castle testifying and admitting that he shot Norman. Assuming, arguendo, that counsel misunderstood the state of the law at the time of trial and that his performance was therefore deficient,[12] this claim nevertheless fails because Castle has not established the requisite prejudice.

Here, trial counsel presented an identity defense, arguing that Castle was not the person who shot Norman. To that end, trial counsel successfully elicited testimony from multiple witnesses that supported Castle's defense strategy. Moreover, the evidence supporting an instruction on justification was weak and attempting to argue that Castle acted in self-defense could have drawn attention to the fact that, when Norman was shot, he was not holding a gun,

---

[12] But see *McClure v. State*, 306 Ga. 856, 859, 865 (1) (834 SE2d 96) (2019) (clarifying whether the admission necessary to assert an affirmative defense was "a legal admission that [was] binding upon the defendant or merely a non-binding assumption of facts for the sake of argument," and noting that the phrase "admits the doing of the act charged" could have been "easily [ ] misinterpreted").

he was lying on the ground, and he had just been beaten. And, as we held in Division 1 (a) above, jury instructions on justification and related principles would have been inconsistent with an identity defense.

Moreover, the evidence against Castle, including eyewitness testimony, was strong. Accordingly, even if counsel's failure to pursue a justification defense resulted from a misunderstanding of law, we cannot say that this mistake prejudiced Castle's defense. See, e.g., *Stallworth*, 304 Ga. at 335 (2) (a) (no "reasonable probability that the trial result would have been different" where three eyewitnesses placed appellant and co-defendant at crime scene and appellant was seen "violently arguing with the victim prior to the shooting"). Accordingly, Castle's ineffective assistance claim fails.

(b) Citing former OCGA § 24-4-8,[13] Castle argues that his trial

---

[13] Former OCGA § 24-4-8 provided: "The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient." The language of this former Code section was carried over to the current Evidence Code. See OCGA § 24-14-8.

35

counsel was deficient in failing to request a jury charge on accomplice corroboration as to Florez's testimony. Castle is incorrect.

Even assuming for the sake of argument that Florez was an accomplice, controlling precedent at the time of Castle's trial "held that refusal to give a requested charge on accomplice corroboration was not error, so long as some corroborating evidence was presented." *Robinson v. State*, 303 Ga. 321, 325 (3) (a) (812 SE2d 232) (2018) (relying on *Hall v. State*, 241 Ga. 252 (244 SE2d 833) (1978)). While we later overruled *Hall*'s holding in *Hamm v. State*, 294 Ga. 791, 796 (2) (756 SE2d 507) (2014), that decision came three years after Castle's trial. And it is well settled that "there is no general duty on the part of defense counsel to anticipate changes in the law, and only in a rare case would it be ineffective assistance by a trial attorney not to make an objection that would be overruled under prevailing law." (Citation and punctuation omitted.) *Lyman v. State*, 301 Ga. 312, 321 (3) (a) (800 SE2d 333) (2017).

Nor did any prejudice arise from counsel's failure to request an

accomplice corroboration charge because Florez's testimony connecting Castle to the altercation and shooting was corroborated by multiple other witnesses. For example, one witness testified that Castle had a gun during the altercation with Norman, and she heard him cock it. A second witness testified that Castle was fighting with Norman, that Castle had a gun, and that he hit Norman. A third witness testified that she saw Castle kick Norman and that Castle had a gun in his hand. A fourth witness testified that she saw Castle "jump" and hit Norman and that she saw Castle with a gun. And a fifth witness testified that he saw Castle shoot Norman. It is therefore "unlikely that the omission of the accomplice corroboration instruction affected the outcome" of Castle's trial. (Citation and punctuation omitted.) *Robinson*, 303 Ga. at 326 (3) (a). For these reasons, Castle has failed to establish that trial counsel was deficient or that he was prejudiced as a result, and therefore his claim of ineffective assistance fails.

(c) Castle also argues that his trial counsel was deficient for calling Trinis as a defense witness because, he says, Trinis's

37

testimony was discredited in various respects and otherwise failed to support Castle's defense. Again, we disagree.

"[D]ecisions about which witnesses to call at trial are matters of trial strategy and tactics, and such strategic and tactical decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances." (Citation and punctuation omitted.) *Roseboro v. State*, 308 Ga. 428, 437 (2) (b) (841 SE2d 706) (2020). See also *Muller*, 284 Ga. at 72 (3) ("In the realm of specific decisions regarding trial strategy, and in particular decisions about which witnesses should be called to testify, defense attorneys are afforded wide discretion." (citation and punctuation omitted)).

Here, Trinis's testimony underscored the confused nature of the brawl and Norman's confrontational arrival at the party, potentially helping Castle's defense. That Trinis was impeached in some respects does not render the decision to call him objectively unreasonable, especially given that his impeachment might have benefitted Castle's defense by calling into question any unfavorable

38

testimony Trinis did happen to give. See *Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009) (holding that trial counsel's decision to call a detective as a witness was not so unreasonable as to constitute deficient performance even though the detective ended up giving unfavorable testimony). And Castle's after-the-fact disagreement with this strategy is not grounds for deficient performance. See *McKenzie v. State*, 284 Ga. 342, 348 (4) (c) (667 SE2d 43) (2008) ("The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel." (citation and punctuation omitted)). This claim of error fails.

5. Finally, Castle argues that the trial court erred by imposing separate sentences for felony murder predicated on the uncharged aggravated assault of Norman by fatally shooting him (Count 2) and for the aggravated assault of Norman by shooting him in the forearm (Count 3). Castle contends that, because he and Jackson were each

charged for both gunshot wounds inflicted to Norman and because witnesses testified inconsistently about who fired which shot, the two shots were effectively the "same crime" and should have merged.

As we stated in *State v. Riggs*, 301 Ga. 63, 65 (1) n.4 (799 SE2d 770) (2017), as to each count charged in an indictment, a trial court is required "to enter either (a) a written sentence on the count or (b) a written notation that the count merged into another count for purposes of sentencing or was vacated by operation of law." Thus, in entering its final judgment, a trial court necessarily must determine whether to impose a sentence on a count or whether to merge that count for sentencing. It is well settled that, where a defendant's crimes arise from "the same conduct," he may not be convicted of more than one crime if, among other things, "[o]ne crime is included in the other[.]" OCGA § 16-1-7 (a) (1). "[W]here one crime is completed before another crime, the 'same conduct' does not establish the commission of both offenses." *Cordero v. State*, 296 Ga. 703, 711 (3) (770 SE2d 577) (2015). One crime is completed before the other where the crimes were separated by a "deliberate

40

interval." Id. at 710-711 (3).

At sentencing, counsel argued to the trial court that there was "either one or two guns . . . involved . . . so I think factually there was one assault," and argued that the court should not sentence Castle separately on the aggravated assault count. It was against this backdrop that the trial court entered separate sentences on Counts 2 and 3, and thus we conclude that the court implicitly found that there were two assaults. See *State v. Walden*, 311 Ga. 389, 389 (858 SE2d 42) (2021) ("When — as here — a trial court makes no explicit findings in ruling on a motion that does not require such findings to be made, we presume that the trial court implicitly made all the findings in support of its ruling that the record would allow."). And because there was witness testimony at trial authorizing such a finding, those implicit factual findings are not clearly erroneous on this record.[14] See, e.g., id. at 390 ("we assume that the trial court

---

[14] The testimony summarized above included that of Florez, who testified that, after Jackson shot Norman, Castle came back "around from where he was around the truck," which was "maybe ten to fifteen feet" away and then shot Norman again.

41

implicitly resolved all disputes of fact and credibility in favor of its ruling, and we generally accept such implicit factual findings unless clearly erroneous"); *Lowe v. State*, 267 Ga. 410, 412 (1) (b) (478 SE2d 762) (1996) (holding that merger was inappropriate where the defendant shot the victim, approached the victim after he fell to his knees, and stood over the victim while he pleaded for his life before "t[aking] deliberate aim" and shooting the victim a second time). Moreover, these facts support a conclusion that there was a deliberate interval between two aggravated assaults. Accordingly, Castle's final enumeration fails.

*Judgments affirmed. All the Justices concur.*

Decided February 6, 2024 — Reconsideration denied March 5, 2024.

Murder. Bartow Superior Court. Before Judge Scott Smith.

*Zell & Zell, Rodney S. Zell*, for appellant (case no. S23A0854).

*Matthew K. Winchester, Jason M. McLendon*, for appellant (case no. S23A0855).

*Samir J. Patel, District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General*, for appellee.