**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 30, 2024**

# In the Court of Appeals of Georgia

A24A0950. KELLEY v. THE STATE.

DOYLE, Presiding Judge.

Following a bench trial, Jason Keith Kelley was convicted of one count of cruelty to animals[1] and one count of aggravated cruelty to animals.[2] He appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support the verdict as to aggravated cruelty to animals; (2) the two convictions

---

[1] OCGA § 16-12-4 (b) ("A person commits the offense of cruelty to animals when he or she: [c]auses physical pain, suffering, or death to an animal by any unjustifiable act or omission. . . .").

[2] OCGA § 16-12-4 (d) ("A person commits the offense of aggravated cruelty to animals when he or she: . . . (3) [m]aliciously tortures an animal by the infliction of or subjection to severe or prolonged physical pain. . . .").

should have merged; and (3) the rule of lenity required that he be sentenced only for the lesser count of cruelty to animals. Discerning no error, we affirm.

Construed in favor of the verdict,[3] the evidence shows that Kelley's adult daughter found a dog on the side of the road, and he was underweight with his ribs showing. She took the dog home, where Kelley also lived, and fed the dog in an attempt to help it recover to a normal weight. After approximately two weeks, the dog had not gained much weight due to severe diarrhea, so Kelley's daughter asked Kelley to help find a new home for the dog. Kelley later told her that he had found a new home with a couple whom they regularly saw in their apartment parking lot.

Instead, Kelley had taken the dog to a dumpster in a small parking lot outside a nearby children's daycare provider. Surveillance video of the parking lot shows that Kelley attempted to abandon the dog in the parking lot, but after the dog ran back toward the daughter's residence, Kelley retrieved the dog, brought it back to the parking lot, and violently flung the dog by its leash into the dumpster. Kelley took a few steps away and then turned around, returning to the dumpster to close the lid before he left the area.

---

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

Two days later, daycare employees discovered the dog alive in the dumpster. They called animal control officers who were able to safely remove the dog from the dumpster, provide veterinary services,[4] and ultimately establish a foster home for the dog. The foster owner described discovering, months later, that the dog had problems on a "slip leash,"[5] and a veterinarian who re-examined the dog at that time took an x-ray scan that revealed cartilage damage indicative of a past injury to the dog's neck. The veterinarian could not determine the exact cause or timing of the damage.

Meanwhile, animal control officers contacted local police who, with the help of Kelley's daughter,[6] eventually identified Kelley as the person in the video throwing the dog into the dumpster. Based on these events, Kelley was charged with two counts of aggravated cruelty to animals: Count 1, based on violently picking the dog up by its leash and causing cartilage damage to the dog's neck, and Count 2, based on trapping the dog in the dumpster by closing the lid. Following a bench trial, the court found

---

[4] The examining veterinarian treated the dog for intestinal parasites.

[5] A slip leash is a "loose lasso" that tightens or loosens depending on whether the dog pulls against the leash.

[6] The daughter reached out to police when she saw the dumpster surveillance video on a Facebook post.

Kelley guilty of the lesser included offense of cruelty to animals as to Count 1[7] and aggravated cruelty to animals as to Count 2. The trial court sentenced Kelly as a recidivist under OCGA § 17-10-7 (c)[8] to a total of five years confinement.[9] Kelley moved for a new trial, which the trial court denied, giving rise to this appeal.

1. Kelley contends that the Evidence was insufficient to support the guilty verdict as to aggravated cruelty to animals in Count 2. We disagree.

We begin with the familiar standard of review. When an appellate court reviews the sufficiency of the evidence,

> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence,

---

[7] As to Count 1, the court found that the evidence did not prove beyond a reasonable doubt that Kelley himself had caused the permanent damage to the dog's neck, but it did find that Kelley committed the misdemeanor offense of unjustifiably causing pain to the dog.

[8] The State introduced evidence of Kelly's prior convictions for felony theft by receiving, aggravated assault, kidnapping, and forgery.

[9] See OCGA § 16-12-4 (e) (" Any person convicted of the offense of aggravated cruelty to animals shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than five years . . . .").

and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[10]

Under OCGA § 16-12-4 (d) (3), "[a] person commits the offense of aggravated cruelty to animals when he or she . . . [m]aliciously tortures an animal by the infliction of or subjection to severe or prolonged physical pain." Consistent with this, Count 2 of the indictment alleged that Kelley "did maliciously torture an animal, a brown male dog, by the infliction of prolonged physical pain and the subjection to prolonged physical pain, to wit: shutting the lid of a dumpster with the dog inside so that the dog could not get out and where the dog was trapped for several days without adequate food or water. . . ."

On appeal, Kelley argues that the State failed to prove that his conduct of trapping the dog in the dumpster inflicted prolonged physical pain on the dog. But as noted above, our review of the evidence is deferential, and the statute requires only proof of "severe or prolonged physical pain." Thus, proof of prolonged pain will

---

[10] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

suffice, even if not severe.[11] We decline to hold that a rational factfinder is required to find that trapping a starving dog in a dumpster for two days without food and water inflicts no physical pain whatsoever on the dog. The dog's experience of pain must necessarily be proved circumstantially, and the trial judge, as fact finder, was entitled to draw reasonable inferences from the evidence.[12] It is undisputed that the dog was in the dumpster for days (not mere hours), so this supports a finding that the dog's experience was "prolonged." The daycare worker explained that due to the trash schedule, the dumpster was "pretty . . . much . . . empty," and the treating veterinarian described the dog as "severely emaciated:" a "one or two" on the scale

---

[11] See *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996) ("The natural meaning of 'or,' where used as a connective, is to mark an alternative and present choice, implying an election to do one of two things.") (citation and punctuation omitted).

[12] See, e. g., *Willis v. State*, 201 Ga. App. 182, 183 (410 SE2d 377) (1991) (finding sufficient circumstantial evidence to support conviction for shooting a dog based on hearing it yelping and seeing it running away from a defendant holding a rifle); *Smith v. State*, 160 Ga. App. 26, 26-27 (1) (285 SE2d 749) (1981) ("The inescapable conclusion to be drawn from the evidence is that appellants abandoned living animals without food or water, thereby causing 'unjustifiable physical pain, suffering, or death.'").

of one to nine rating a dog's body condition.[13] The animal control officer who retrieved the dog described it as "very frightened," and "it wanted out." Based on this evidence, a rational trier of fact was authorized to find that Kelley caused the dog prolonged pain due to trapping an already emaciated dog in the dumpster for days without food or water.[14] Accordingly, this enumeration is without merit.

2. Kelley next contends that the trial court erred by failing to merge the conviction for cruelty to animals (Count 1) with the conviction for aggravated cruelty to animals (Count 2) under the "unit-of-prosecution" analysis. We review this issue de novo,[15] and based on the record before us, we discern no basis for reversal.

At the sentencing hearing, after a brief argument regarding whether any sentences would be concurrent or consecutive to the three-year probation revocation triggered by these offenses, the trial court orally announced that it would "keep it

---

[13] The veterinarian also explained that the dog's emaciation would not result from merely being starved for two or three days, so the dog was already malnourished when Kelley put it in the dumpster.

[14] There is no serious dispute regarding Kelley's intent or malice. OCGA § 16-12-4 (a) (2) defines "malice" as "actual intent" or "[t]he wanton and willful doing of an act with an awareness of a plain and strong likelihood that a particular harm may result."

[15] See *Wilkins v. State*, 369 Ga. App. 42 (1) (892 SE2d 61) (2023).

simple. On Count 2, the controlling count, I'll sentence him to five years as a recidivist under [OCGA §] 17-10-7 (c)." With respect to Count 1, the court announced that it would sentence Kelley to 12 months concurrent with the sentence for Count 2.[16]

> "Merger" refers generally to situations in which a defendant is prosecuted for and determined by trial or plea to be guilty of multiple criminal charges but then, as a matter of substantive double jeopardy law, can be punished — convicted and sentenced — for only one of those criminal charges. A unit-of-prosecution analysis, which requires careful interpretation of the criminal statute at issue to identify the unit of prosecution — the precise act or conduct that the legislature criminalized, should be applied *to determine whether multiple counts of the same crime merge*. By contrast, a required evidence analysis, which considers whether each crime requires proof of a fact which the other does not, applies to a merger analysis *where the same act or transaction constitutes a violation of two distinct statutory provisions*.[17]

---

[16] Although the written disposition does not explicitly state that the sentences are concurrent, neither party disputes that the sentences are concurrent. See OCGA § 17-10-10 (a) ("Where at one term of court a person is convicted on more than one indictment or accusation, or on more than one count thereof, and sentenced to imprisonment, the sentences shall be served concurrently unless otherwise expressly provided therein.").

[17] (Citations and punctuation omitted; emphasis supplied.) *State v. Shropshire*, 318 Ga. 14, 15-16 (2) (896 SE2d 541) (2023), quoting *Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006).

Here, Kelley argues that he was convicted of two counts of the same crime, so they should merge under the unit-of-prosecution analysis. But Kelley was not convicted of two counts of the same crime — cruelty to animals and aggravated cruelty to animals are different crimes.[18] Further, he was convicted of two different offenses based on two different acts: Count 1, cruelty to animals under OCGA § 16-12-4 (b) (causing pain by the unjustifiable act of violently flinging the dog in the air by its leash); and Count 2, aggravated cruelty to animals under OCGA § 16-12-4 (d) (3) (maliciously torturing the dog by inflicting prolonged physical pain of starvation by shutting the dumpster lid and trapping the dog in the dumpster). As noted above, the unit-of-prosecution analysis addresses multiple convictions of the same crime.[19] Therefore, Kelley's argument that the trial court erred by failing to apply the unit-of-prosecution analysis is without merit.

---

[18] See *Peacock v. State*, 314 Ga. 709, 723 (5) (878 SE2d 247) (2022) ("The felony offense of aggravated cruelty to animals and the misdemeanor offense of cruelty to animals are different offenses."). Cf. *Shropshire*, 318 Ga. at16 (2) (explicitly rejecting the unit-of-prosecution analysis because "child molestation and aggravated child molestation are different crimes"), citing OCGA § 16-6-4 (a) (defining child molestation) with OCGA § 16-6-4 (c) (defining aggravated child molestation).

[19] See *Shropshire*, 318 Ga. at 15-16 (2).

To the extent that Kelley's argument implicates the required evidence analysis applicable to two convictions for the same criminal act,[20] the convictions do not merge because, as alleged in the indictment and shown by the evidence, they arise from different conduct.[21] The conviction for Count 1 was predicated on Kelley's act of slinging the dog violently into the air by its leash, and Count 1 of the indictment made no mention of the dumpster. The conviction for Count 2 was predicated on the separate conduct, after Kelley began to walk away, of returning to the dumpster to trap the dog by closing the lid.[22] Despite the fact that the two counts arose from the single

---

[20] See generally *Dixon v. State*, 302 Ga. 691, 697 (4) (808 SE2d 696) (2017) (explaining that appellate courts "have the discretion to correct merger errors sua sponte — regardless of who is harmed by the error and who benefits from its correction — because a merger error results in an illegal and void judgment of conviction and sentence.").

[21] See *Waits v. State*, 282 Ga. 1, 4 (2) (644 SE2d 127) (2007) ("The rule prohibiting more than one conviction if one crime is included in the other does not apply unless 'the same conduct' of the accused establishes the commission of multiple crimes."), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 23 (838 SE2d 808) (2020). See also *Eleby v. State*, 319 Ga. 234, 248 (7) (__ SE2d __) (2024) (holding that aggravated assault did not merge with armed robbery because they were two separate acts, i.e., the aggravated assault was completed before the armed robbery).

[22] See generally *Jackson v. State*, 318 Ga. 393, 411 (5) (897 SE2d 785) (2024) ("One crime is completed before the other where the crimes were separated by a 'deliberate interval.'"); *McKenzie v. State*, 302 Ga. App. 538, 539 (1) (a) (691 SE2d 352) (2010) ("[I]f the underlying facts show that one crime was completed prior to the

event of Kelley's abandonment of the dog, each of the two different acts were separate and amounted to different offenses defined by the two statutory provisions in Counts 1 and 2.[23] Because the two convictions were predicated on two different acts that violated two different statutory provisions, Kelley's sentence for both counts did not implicate the double jeopardy concerns addressed by the required evidence analysis.[24]

---

second crime, there is no merger."). Cf. *Rozier v. State*, 365 Ga. App. 178, 183 (3) (877 SE2d 855) (2022) ("[T]he merger issue turns on whether the evidence showed that the two different types of harm to the dog were caused by a single act.").

[23] Compare OCGA § 16-12-4 (b) (causing pain by the unjustifiable act of slinging the dog) with OCGA § 16-12-4 (d) (maliciously torturing by subjecting to prolonged pain of starvation by being trapped in the dumpster). In this way, this scenario differs from that in *Rozier*, 365 Ga. App. at 182 (3), in which the defendant was convicted of two counts of *the same crime* — aggravated cruelty to animals under OCGA § 16-12-4 (d) — based on two injuries he inflicted on the dog during a single violent altercation with the dog. Based on that, this Court held in *Rozier* that the two convictions merged under the unit-of-prosecution analysis.

[24] Compare *Taylor v. State*, 307 Ga. 755, 756 (1) (838 SE2d 261) (2020) (explaining that "a defendant may not be convicted of two or more counts of *the same crime* where the evidence shows that the two counts are part of a single incident") (emphasis supplied); *Rozier*, 365 Ga. App. at 182-183 (3) (addressing multiple counts of "the *same* crime," and stating that "the merger issue turns on whether the evidence showed that the two different types of harm to the dog were caused by a single act.") (emphasis in original).

11

3. Kelley also argues that the trial court erred by failing to apply the rule of lenity to his convictions. This argument was rejected in *Peacock v. State*:[25]

> [T]he rule of lenity does not apply here. That rule applies when a statute, or statutes, establishes, or establish, different punishments for the same offense, and provides that the ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment. The felony offense of aggravated cruelty to animals and the misdemeanor offense of cruelty to animals are different offenses. Although both offenses criminalize causing [pain to] an animal, the first requires that a person do so "maliciously [and in a prolonged way]," OCGA § 16-12-4 (d) [(3)], and the second does not, see OCGA § 16-12-4 (b) (1). When the two defined crimes do not address the same criminal conduct, there is no ambiguity created by different punishments being set forth for the same crime, and the rule of lenity does not apply.[26]

*Judgment affirmed. Hodges and Watkins, JJ., concur.*

---

[25] 314 Ga. 709 (878 SE2d 247) (2022).

[26] (Citations and punctuation omitted.) *Peacock*, 314 Ga. at 723 (5).

12