**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: January 21, 2026

S25A1234. PHILLIPS v. THE STATE.

ELLINGTON, Justice.

A DeKalb County jury found Eureon Phillips guilty of felony murder and other crimes in connection with the shooting death of Tiffany Valkoun.[1] Phillips contends that the evidence was

---

[1] The crimes occurred on September 13, 2019. On January 16, 2020, a DeKalb County grand jury returned an indictment charging Phillips with the malice murder of Valkoun (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a convicted felon (Count 3), aggravated assault (Count 4), arson in the first degree (Count 5), concealing the death of another (Count 6), possession of a firearm by a convicted felon (Count 7), and possession of a firearm during the commission of a felony (Count 8). Antisa Columbus and Lonzell Guffie were also named in the indictment, having been charged with arson in the first degree (Count 5) and concealing the death of another (Count 6). Phillips was tried separately, and at the time of his trial, the cases against his co-indictees remained pending.

At the conclusion of a jury trial that began on May 10, 2023, the jury found Phillips guilty on all counts, except malice murder (Count 1). On May 31, 2023, the trial court sentenced Phillips to life in prison without the possibility of parole for felony murder (Count 3); twenty years in prison, concurrent to Count 3, for aggravated assault (Count 4); twenty years in prison, concurrent to Count 3, for arson in the first degree (Count 5); 10 years in prison, concurrent to Count 3, for concealing the death of another (Count 6); and, five years in prison, consecutive to Count 3, for possession of a firearm

insufficient to authorize the jury's verdict, that the trial court erred in denying Phillips's motion for a mistrial, and that the trial court erred when it denied defense counsel's request to play two witness statements to the jury in their entirety. For the reasons explained below, we see no merit to these claims of error and affirm.

1. Phillips contends that the State's evidence was insufficient as a matter of constitutional due process to support the jury's verdict beyond a reasonable doubt. See *Jackson v. Virginia*, 443 US 307, 318–319 (1979). In assessing this claim of error, "we view all of the evidence presented at trial in the light most favorable to the verdicts and consider whether any rational juror could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Moulder v. State*, 317 Ga. 43, 46–47 (2023). And "[w]e leave to the jury the resolution of conflicts or inconsistencies

---

during the commission of a felony (Count 8). The remaining counts (Counts 2 and 7) were vacated by operation of law or merged. Phillips timely filed a motion for new trial on May 30, 2023, which he amended on September 2, 2024. After a hearing, the trial court denied the motion for new trial on November 21, 2024. Phillips timely filed a notice of appeal on December 16, 2024, which he amended on February 26, 2025. The case was docketed in this Court to the August 2025 term and submitted for a decision on the briefs.

in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts." *Perkins v. State*, 313 Ga. 885, 891 (2022) (citation and quotation marks omitted). "As long as there is some competent evidence, even [if] contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." *Jones v. State*, 304 Ga. 594, 598 (2018) (citation and quotation marks omitted).

So viewed, the evidence presented at trial showed that on September 13, 2019, police responded to a 911 call concerning a loud explosion in a DeKalb County neighborhood. When they arrived, they found a van engulfed in flames. After the fire was extinguished, they discovered a burned body inside the van. Investigators later determined that the charred remains belonged to Valkoun and that the van had been loaned to her by its owner, her father, Alan Valkoun. The medical examiner testified that Valkoun's cause of death was a gunshot wound to the back of the head and that the burns to her body had occurred post-mortem.

An arson investigator testified that the fire had been started in

the van's passenger compartment, that the gas tank was intact, and that the odor of gasoline emanated from the van's interior. A forensic chemist confirmed the presence of gasoline on Valkoun's clothing and on materials cut from the van's interior.

Investigators reviewed surveillance video recordings from Valkoun's apartment complex and observed her and another woman entering and leaving the apartment on September 13. The video recordings also showed the van leaving the complex. The video recordings as well as information gleaned from Valkoun's cell phone records led investigators to the woman who had been with her prior to her death, Antisa Columbus. Valkoun's cell phone data showed that she had been communicating with Columbus shortly before leaving her residence.

Columbus testified at trial that she was Valkoun's friend and that she was dating Phillips at the time of the crimes. Columbus testified that, when the police first interviewed her, she told them she was not involved in Valkoun's death. She said she lied because she was "terrified" of Phillips. Columbus recounted how she

occasionally borrowed the van to get to and from work. On the day of the murder, Columbus borrowed the van and drove it to Phillips's residence on Rosewood Road in DeKalb County. Columbus, Valkoun, and Phillips were together in front of Phillips's residence. According to Columbus, the three argued about Valkoun's intention to return the van. Valkoun then spit on Phillips, and Phillips responded by pulling a gun out of his pocket and hitting her on the head with it. Columbus testified that Phillips's gun discharged, killing Valkoun. Columbus testified that she and Phillips changed their clothes and cleaned Valkoun's blood off themselves. Phillips then enlisted his friend, Lonzell Guffie, to help him dispose of the body.

Guffie testified that he was a long-time friend of Phillips and that Phillips contacted him on September 13, telling him that he had a job for him to do. Phillips picked Guffie up and the two drove to a gas station where Phillips purchased gas which he pumped into a gas can. Thereafter, they drove to a house where the van was parked. Phillips told Guffie to drive the van, but when he got in, he

found a body inside. He tried to refuse, but Phillips said he would kill him if he did not do as he was told. Guffie testified that he drove the van while someone else, a person he suspected was Phillips's girlfriend, sat in the back seat. After they got out of the van, Guffie, at Phillips's direction, poured gas on the body. Someone threw a burning match and a fire erupted. Guffie admitted he sustained burns to his chest and stomach from the fire. Phillips then drove Guffie back where he had picked him up. On the way, he told Guffie that he had shot Valkoun in the back of the head. Guffie testified that Phillips confided that "he put the gun in the back of [Valkoun's] head[,] and the gun went off." He threatened to kill Guffie if he called the police. After Phillips threatened Guffie's life again the following day, Guffie turned himself in to the police.

Cell site location data subpoenaed by investigators from Valkoun's, Columbus's, and Phillips's cell phone providers corroborated witness testimony concerning the evening's events. The data showed that all three cell phones were in the same area of DeKalb County at the time of the murder. The data also showed

Columbus's and Phillips's cell phones traveling together both before and after the 911 call reporting the burning van. At trial, Phillips stipulated to being a convicted felon.

Phillips challenges the sufficiency of this evidence by asserting that the "testimony of the State's crucial witness [Antisa Columbus] was impermissibly bolstered by the State," and that the jury must have had "substantial doubts as to the State's case" because it acquitted Phillips of malice murder. Neither of Phillips's assertions constitute grounds for showing that the evidence was insufficient as a matter of due process because the assertions do not challenge whether there was some competent evidence, even if contradicted, to support each fact necessary to make out the State's case. See, e.g., *Perkins v. State*, 313 Ga. at 891; *Jones v. State*, 304 Ga. at 598. Consequently, this claim of error fails.

2. Phillips argues that the trial court erred in denying his motion for a mistrial when a State's witness, Sergeant Drew Collins, impermissibly commented on the truthfulness of Columbus during direct examination. For the following reasons, this claim of error is

7

without merit.

During examination of Sergeant Collins, the prosecutor asked about the statements that Columbus had given him:

Q: When she talked to you initially[,] was she truthful?
A: No, not initially.
Q: Then was she later truthful in that same statement?
A: Yes.

Defense counsel objected, arguing that the State was "[a]sking the witness for his opinion on someone's credibility, that's the province of the jury." The trial court responded: "He [Sergeant Collins] can't make a determination of credibility. He can tell what he found in his investigation. You may want to restate that question so that it does not appear that he is trying to say whether or not that individual was credible or not." After the prosecutor then asked five questions related to Columbus's phone records, defense counsel asserted that he had a motion to make outside the presence of the jury. Defense counsel objected and moved for a mistrial, arguing that the State was using Sergeant Collins to bolster the credibility of the State's "star witness," Columbus, by vouching for her

8

truthfulness. After a brief recess, the trial court denied the motion and announced that it would give curative instructions.

Assuming, without deciding, that this claim of error was adequately preserved for appellate review, the trial court did not abuse its discretion in denying the motion for a mistrial as the trial court's curative instruction was sufficient to counter any alleged harm caused by the witness's brief statement. "The decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." *Perkins v. State*, 313 Ga. 885, 896 (2022) (cleaned up). "Trial courts are vested with great discretion to grant or deny mistrials because they are in the best possible position to determine whether one is warranted." *Allen v. State*, 315 Ga. 524, 533 (2023) (cleaned up). Where a trial court "elects to give a curative instruction, [this Court] will not grant a new trial unless it is clear that the [trial] court's instruction failed to eliminate the effect of the prejudicial comment." *Williams v. State*, 301 Ga. 712, 717 (2017).

The trial court gave the following curative instructions:

> Ladies and gentlemen of the jury, before you went to lunch you heard some testimony from Sergeant Collins. Sergeant Collins gave some testimony regarding what he believed about statements made by Antisa Columbus. Please disregard any characterization of those statements. As members of the jury, you alone are the triers of fact and you alone may determine the credibility of the witnesses in this trial.
>
> In deciding this, you may consider all of the facts and circumstances of the case including the witness's manner of testifying, their intelligence[2], their means and opportunity of knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their testimony, their interest or lack of interest in the outcome of the case, and their personal credibility as you observe it.

In its final charge to the jury, the trial court repeated this admonition in the instruction concerning the credibility of witnesses.

The curative instructions were adequate to cure any harm for the following reasons. First, we note that "qualified jurors under

---

[2] Although Jackson has not raised the following as a claim of error, this Court has expressed concern with respect to the portion of the charge concerning witness "intelligence"; nevertheless "we have held that, "even assuming the better practice is to omit intelligence as one of the factors in the credibility charge, its inclusion is not reversible error." *Jackson v. State*, 318 Ga. 393, 404 (2024).

oath are presumed to follow the instructions of the trial court," *Allen v. State*, 277 Ga. 502, 504 (2004), and Phillips has not argued that the jury would have been confused or misled by this instruction as given. Second, the instruction was sufficient to cure the harm alleged. The investigator's testimony contained no reference to specific statements by Columbus that the investigator expressly believed were truthful or untruthful. The exchange was brief and did not characterize Columbus's trial testimony as being truthful. Moreover, during her own trial testimony, Columbus characterized her first statement to the investigator as untruthful because she was afraid of Phillips. Thus, the jury could view the investigator's testimony as simply recounting what Columbus had told him about her reasons for revising her statement. For these reasons, we see no abuse of discretion in the trial court's decision to deny Phillips's motion for a mistrial and instead to give curative instructions. See *Williams*, 301 Ga. at 717.

3. Phillips further asserts that the trial court erred in restricting defense counsel's cross-examination of Guffie and

Columbus by not allowing their recorded "witness statements to be played to the jury in their entirety." Because the jury did not hear the statements in full, Phillips argues, the jury could not determine if the witnesses, especially Columbus, were being truthful. We disagree.

Phillips has not identified any ruling from the trial court that expressly limited his cross-examination of any witness, including questions counsel posed concerning Columbus's first statement to the police. Instead, he took issue with the trial court's ruling permitting him to play for the jury only those portions of the witnesses' recorded interviews that were inconsistent with the witnesses' trial testimony. The trial court explained to defense counsel that he must comply with the evidentiary rule governing the admission of prior inconsistent statements before he could introduce extrinsic evidence of out-of-court witness statements.[3] Phillips has

---

[3] Phillips has not shown that the court's ruling in this respect was erroneous. Indeed, pursuant to OCGA § 24-6-613(b),

> [e]xtrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an

12

not identified any law that supports his contention that he was entitled to play the witness interviews in their entirety.

Specifically, the record shows that Phillips initially asked to have portions of the recorded interviews of Guffie and Columbus, both witnesses for the prosecution, played for the jury. The record shows that the trial court permitted the defense to play portions of these interviews, in the presence of the jury, to refresh the witnesses' recollections or to impeach them during cross-examination. However, the trial court did not permit Phillips to play the interviews in their entirety. The record also shows that counsel initially conceded that this was the correct procedure. Nevertheless, he later renewed his motion to play the statements to the jury in their entirety. Again, the court denied the motion. Moreover, in its order denying Phillips's motion for new trial, the trial court

---

> opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require.

See also OCGA § 24-8-801(d)(1)(A) (prior inconsistent statements meeting requirements of OCGA § 24-6-613(b) are not hearsay if the declarant testifies at trial and is subject to cross-examination).

13

reiterated its ruling, "which was simply that any prior statements were admissible only if inconsistent with the [the witnesses'] trial testimony." The trial court further noted that

> [Phillips] has not pointed to exactly what within the prior statements he is alleging the jury did not hear from the stand. Both witnesses were cross-examined at length and, since the prior statements were not admitted into evidence and no proffer of their contents was made at trial or at the new trial hearing, the [c]ourt could only speculate what is contained within them that was not testified to at trial.

Assuming without deciding that Phillips preserved this claim of error for ordinary review, we see no abuse of discretion.[4] "Like most questions about the admissibility of evidence, the scope of cross-examination is committed in the first instance to the sound discretion of the trial court, and we review a limitation of cross-examination only for an abuse of that discretion." *Lucas v. State*, 303 Ga. 134, 136–37 (2018). Here, the record does not show that the trial court improperly curtailed the scope of cross-examination. Rather,

---

[4] See *Walker v. State*, 301 Ga. 482, 488 (2017) (discussing the necessity of a proffer when evaluating whether a ruling excluding evidence has been preserved for ordinary appellate review pursuant to OCGA § 24-1-103(a)(2)).

the record shows that, in accordance with OCGA § 24-6-613(b), the trial court permitted Phillips to cross-examine Guffie and Columbus with their prior inconsistent statements within the bounds of the law. See *Lucas*, 303 Ga. at 137–40. For these reasons, we discern no abuse of discretion.

*Judgment affirmed. All the Justices concur.*